I would affirm the judgment of the district court.

**Rosemarie T. SCHWILM, Administratrix of the Estate of Carrol A. Schwilm, Deceased, Appellant,**

**v.**

**Thomas J. HOLBROOK, M.D. and Cabell Huntington Hospital.**

**No. 81–1357.**

United States Court of Appeals, Third Circuit.

Argued Sept. 15, 1981.

Decided Sept. 28, 1981.

J. Jerome Mansmann, (argued), Gondelman Baxter Mansmann & McVerry, Pittsburgh, Pa., for appellant.

Avrum Levicoff, (argued), Egler & Reinstadtler, Pittsburgh, Pa., for appellee.

Before GIBBONS and HUNTER, Circuit Judges and GERRY, District Judge.*

## OPINION OF THE COURT

GIBBONS, Circuit Judge.

Rosemarie T. Schwilm, Administratrix of the Estate of Carroll A. Schwilm, appeals from a judgment dismissing her diversity wrongful death and survivorship action on the ground of lack of personal jurisdiction over the nonresident defendant, Thomas J. Holbrook, M.D. She also appeals from the denial of her motion to transfer the action to an appropriate district court in West Virginia, Dr. Holbrook's home state. Because we conclude that West Virginia is the more appropriate forum for this action, we do not decide whether personal jurisdiction could properly have been asserted in Pennsylvania. We hold that the district court abused its discretion in denying plaintiff's transfer motion, and remand for entry of an appropriate order under 28 U.S.C. § 1404(a).

### I.

On June 9, 1977, plaintiff's decedent, Carrol A. Schwilm, sustained injuries in a West Virginia diving accident. He was admitted to Cabell Huntington Hospital in West Virginia (Cabell), where Dr. Holbrook treated him. Mr. Schwilm was a Pennsylvania resident; Dr. Holbrook is a West Virginia resident. On the basis of x-rays taken in West Virginia, Dr. Holbrook diagnosed Schwilm's injury as a neck sprain, and treated him accordingly. In fact, Schwilm had suffered a fracture of the odontid process. Plaintiff maintains that the treatment Schwilm received from Dr. Holbrook thus was inappropriate to the injury actually sustained.[1]

Following almost two weeks of treatment in West Virginia, Dr. Holbrook arranged for Schwilm's transfer to St. Francis Hospital in Pittsburgh, Pa. Dr. Holbrook telephoned a doctor at the Pittsburgh hospital to set up the transfer, (Complaint ¶ 9), and subsequently mailed to the Pittsburgh hospital Schwilm's x-rays and other medical records. (Complaint ¶ 10). The transfer arrangements and dispatch of medical records are Dr. Holbrook's only direct contacts with Pennsylvania.

On June 22, 1977, Schwilm was admitted to St. Francis Hospital. Subsequent medical tests in Pittsburgh revealed Dr. Holbrook's misdiagnosis. Schwilm's Pennsylvania doctors eventually determined that only orthopedic surgery could correct his injury. During surgery, Schwilm's left vertebral artery was entered, causing blood losses and neurological deficits which resulted in Schwilm's death on October 11, 1977.

On June 25, 1979, Rosemarie T. Schwilm, as administratrix of her husband's estate, filed suit against Dr. Holbrook and against Cabell in the Commonwealth of Pennsylvania Arbitration Panels for Health Care.[2] On July 23, 1979, Cabell successfully petitioned for removal to the United States District Court for the Western District of Pennsylvania. On September 8, 1979 Cabell filed an uncontested motion to dismiss for lack of personal jurisdiction which the district court granted.

On October 31, 1980, Dr. Holbrook filed a petition for removal from Allegheny Coun-

---

* Hon. John F. Gerry, United States District Judge for the District of New Jersey, sitting by designation.

1. Plaintiff asserts that the correct treatment required immobilization of Schwilm's head and neck.

2. At the time Ms. Schwilm initiated this action, Pennsylvania required all medical malpractice suits first to proceed through an arbitration panel before adjudication in a state court. *See generally Edelson v. Soricelli*, 610 F.2d 131 (3d Cir. 1979). The Pennsylvania Supreme Court subsequently held this exhaustion requirement unconstitutional, *Mattos v. Thompson*, 491 Pa. 385, 421 A.2d 190 (1980). Ms. Schwilm also filed a complaint against Holbrook and Cabell in Allegheny County Court of Common Pleas on October 20, 1980.

ty Common Pleas to the Western District of Pennsylvania. On November 20, 1980, Dr. Holbrook filed in federal court a motion to dismiss for lack of personal jurisdiction. On January 20, 1980, the court granted Holbrook's motion, and denied Ms. Schwilm's motion for transfer of venue pursuant to 28 U.S.C. §§ 1404(a) and 1406(a).[3] This appeal followed.

## II.

Ms. Schwilm alleges that the Western District of Pennsylvania may assert personal jurisdiction over Dr. Holbrook on the basis of the Pennsylvania long arm statute, 42 Pa.C.S. §§ 5322(a)(4) and 5322(b). Section 5322(a)(4) permits assertion of personal jurisdiction over a nonresident defendant when the claim arises out of a harm or tortious injury occurring in Pennsylvania due to an act or omission occurring outside Pennsylvania. Section 5322(b) authorizes exercise of personal jurisdiction "to the fullest extent allowed under the Constitution of the United States . . . based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States."

Ms. Schwilm's complaint states that Dr. Holbrook is a nonresident who has caused harm in Pennsylvania. Complaint ¶ 11; that he engaged in numerous negligent activities, including misdiagnosing Schwilm, affording substandard medical care, failing to prevent future harm resulting from the misdiagnosis, negligently rendering services to Schwilm, and causing Schwilm to undergo surgery in Pennsylvania due to improper care in West Virginia. Complaint ¶¶ 12, 13.

When personal jurisdiction over a nonresident defendant is asserted on a basis other than consent, physical presence, or doing business, the claim must arise from a specific forum-related act. Minimum contacts analysis is inappropriate where defendant's forum activities do not give rise to the claim. Instead, when pressing a nonforum-related claim, plaintiff must demonstrate that the defendant maintained "continuous and substantial" forum affiliations. *See, International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *Compagnie des Bauxites de Guinea v. Insurance Co. of North America*, 651 F.2d 877, 889–91, (3d Cir. 1981) (Gibbons, J., dissenting). Dr. Holbrook maintains that the alleged negligence occurred in West Virginia, that plaintiff thus sues on a nonforum-related injury, and that the "continuous and substantial" test must therefore apply. He further observes that under no construction of the facts alleged in the complaint could the court divine his continuous and substantial Pennsylvania presence. Finally, Dr. Holbrook argues, the phone calls and mailing of the medical records—Dr. Holbrook's only direct associations with Pennsylvania—were not themselves elements of Schwilm's injury, and cannot be counted toward accrual of an action against him in Pennsylvania. Therefore they do not constitute "minimum contacts" giving rise to a Pennsylvania claim.

Plaintiff's construction of the injury differs. According to plaintiff's view, a harm occurred in West Virginia, but separate, albeit continuing, harms occurred in Pennsylvania when Dr. Holbrook sent Schwilm back to Pennsylvania, and misinformed Schwilm's Pennsylvania doctors by phone and by mail of Schwilm's condition. While the original tortious conduct occurred in West Virginia, an adequate Pennsylvania nexus developed when Holbrook exported his misdiagnosis to Pennsylvania, where it delayed discovery of Schwilm's actual injury. Moreover, plaintiff contends, Dr. Holbrook knowingly treated a Pennsylvania resident in West Virginia, and purposefully sent both Schwilm and Schwilm's misleading medical records back to Pennsylvania.

While plaintiff's construction of the facts does not set out an unshakable case for assertion of long arm jurisdiction, it does establish a good faith basis for belief that Dr. Holbrook could be compelled to defend

---

**3.** The docket entries do not reveal when Ms. Schwilm's transfer motion was filed, but·it was entertained by the court and denied.

in Pennsylvania. In the commercial context, caselaw addressing negligence occurring out of state, coupled with deliberate or knowing exportation to the forum of a defective article generally gives rise to qualitatively sufficient forum contacts to permit assertion of long arm jurisdiction consonant with the fourteenth amendment. *Compare Sunn Classic Pictures, Inc. v. Budco Inc.*, 481 F.Supp. 382 (E.D.Pa.1979) (jurisdiction properly asserted over third party defendant who knowingly sent three film prints which proved to be defective into Pennsylvania) *with Davis v. C. & N.W. Transport Co.*, 259 Pa.Super. 544, 405 A.2d 959 (1979) (no jurisdiction in Pennsylvania over Illinois corporation which negligently loaded freight cars in Illinois, when one car fortuitously appeared in Pennsylvania and plaintiff was injured while unloading it). The Supreme Court's recent decision in *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), does not limit the reach of a "tort out/harm in" long arm, when the place of the harm was clearly and specifically foreseeable. See 444 U.S. at 297, 100 S.Ct. at 567. Under that standard, Dr. Holbrook's knowing treatment of a Pennsylvanian, combined with his transfer of Schwilm and Schwilm's medical records back to Pennsylvania, would seem to satisfy any "specifically foreseeable" test.

On the other hand, *World-Wide Volkswagen* emphasized the potential due process infirmity of assertion of personal jurisdiction over a "local dealer" on the basis of negligence originating outside the forum. The local dealer limitation, while conceived as a modification of the "stream of commerce" basis for assertion of personal jurisdiction, is also compelling in the noncommercial personal injury context. Many doctors maintain an essentially local practice. They do not solicit patients from out of state, nor do they derive special benefits from treating nonresidents. Unlike a commercial enterprise, which may tailor its business to avoid dealing with out of state

customers, a physician, and especially one on a hospital emergency room staff, is obliged to treat whoever requires medical attention. The doctor's professional obligations substantially dilute the "purposefulness" of caring for a foreign patient. Similarly, it is questionable whether transferring a patient back to his home state constitutes purposeful activity in the patient's home state, at least when the patient has requested the transfer.[4]

In the case at hand, however, these considerations are not dispositive. They merely outline the bases and problems of asserting personal jurisdiction in Pennsylvania over Dr. Holbrook. We need not determine whether Dr. Holbrook is in fact amenable to jurisdiction in Pennsylvania because we hold West Virginia the more appropriate forum. The accident, alleged misdiagnosis, and initial treatment all occurred in West Virginia. In addition to Dr. Holbrook, pertinent witnesses are to be found at the West Virginia hospital. From the point of view of prosecution of the litigation, West Virginia is the more convenient forum.

### III.

Our discussion of personal jurisdiction, however, is relevant to disposition of Ms. Schwilm's transfer motion. While this circuit has held since *United States v. Berkowitz*, 328 F.2d 358 (3d Cir. 1964), that the transferor court need not have had jurisdiction over the defendant in order to grant plaintiff's transfer motion under 28 U.S.C. § 1404(a), *cf. Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962) (transferor court need not have had jurisdiction over the defendant to effect a transfer under 28 U.S.C. § 1406(a)), the jurisdictional issue in this case is pertinent to our holding that the district court assigned improper reasons for its denial of Ms. Schwilm's motion. The district court refused to transfer the case to an appropriate

---

4. This analysis obviously applies with much less force to a doctor serving a multistate metropolitan area, such as a Philadelphia physician who draws patients from the New Jersey suburbs.

**16**

court in West Virginia because it held the dismissal of the complaint against Cabell for lack of personal jurisdiction put plaintiff on notice that jurisdiction was also lacking as to Dr. Holbrook. 48a. We observe several deficiencies in the district court's rationale.

First, Dr. Holbrook waited until 13 months after dismissal of the action against Cabell before bringing his own motion to dismiss. This delay may well have led plaintiff to believe that Dr. Holbrook would waive any contest to personal jurisdiction. The district court implied that plaintiff was unduly tardy in pressing her transfer motion. Until Holbrook moved to dismiss, however, plaintiff had no reason to seek a transfer. To ascribe Dr. Holbrook's delay to Ms. Schwilm and therefore to deny her transfer motion places a plaintiff in an unreasonable position. A plaintiff with a bona fide basis for believing there is personal jurisdiction over the defendant must either make a possibly unnecessary transfer motion, or risk extinguishment of the action by operation of the statute of limitations. We also believe the district court's rationale could promote abusive litigation tactics: a defendant in certain circumstances could wait until expiration of the limitations period before contesting personal jurisdiction, leaving a plaintiff without any forum in which to prosecute the claim if the transfer motion is denied due to delay.

Second, Section 1404(a) does not include a time limitation. It simply provides:

> For the convenience of the parties and the witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

Although denial of a transfer motion for undue and prejudicial delay would not be inconsistent with the statute, *see, e. g., Zie-gler v. Dart Industries Inc.*, 383 F.Supp. 362 (D.Del.1974) (plaintiff waited four years before requesting transfer, and had previously resisted defendant's transfer motion); *Roller Bearing Co. of America v. Bearings Inc.*, 260 F.Supp. 639 (E.D.Pa.1966) (plaintiff waited five years), the circumstances of this case indicate neither that the motion was excessively late, nor that the delay was prejudicial to the defendant. Thus, while we do not hold that a Section 1404(a) transfer may never be denied for delay, denial on that ground was unwarranted in this case.

Third, dismissal of the action against Cabell does not imply lack of jurisdiction over Dr. Holbrook. In the case of the hospital, Ms. Schwilm could point to no affirmative act linking Cabell to Pennsylvania. As outlined above, however, plaintiff had a different, bona fide and substantial basis for asserting jurisdiction in Pennsylvania over Dr. Holbrook. Transfer of venue under 28 U.S.C. § 1404(a) is particularly appropriate in the situation this case poses. There has been a bona fide litigated dispute over personal jurisdiction. In the course of the dispute, the limitations period has expired. Failure to transfer would result in extinction of any claim in any forum against Dr. Holbrook. As the court observed in *Founds v. Shedaker*, 278 F.Supp. 32, 33 (E.D.Pa. 1968), transfer "is clearly consistent with the policies underlying § 1404(a). If defendant's motion to dismiss [for lack of personal jurisdiction] were granted plaintiffs would be forever barred from adjudication of their case because of the expiration of the relevant period of limitations."

We therefore hold that the district court abused its discretion in denying plaintiff's transfer motion on the ground of undue delay and of failure to anticipate jurisdictional defects.[5] We will remand to the district court for the entry of an order transferring the case to a district court in

---

5. We find the district court's other reason for refusing to grant the transfer motion without merit. The district court noted that plaintiff has also filed a malpractice action in Pennsylvania against Schwilm's Pennsylvania doctors, and that "the Pennsylvania suit appears to be the one on which plaintiff is concentrating." 49a, Section 1404(a) does not contain an election of remedies requirement. Plaintiff is free to concentrate on both actions.

West Virginia pursuant to 28 U.S.C. § 1404(a).[6]

---

**6.** Plaintiff also maintains that the district court should have transferred the case under 28 U.S.C. § 1406(a). That provision, however, applies when venue was improperly laid in the transferor court. In this action, plaintiff resides in the Western District of Pennsylvania, and venue is proper. 28 U.S.C. § 1391(a). While arguments have been made that improper venue is not a prerequisite to transfer under § 1406(a), our holding under § 1404(a) renders rehearsal and disposition of these arguments unnecessary. *See United States v. Berkowitz*, 328 F.2d at 360–61; *Shong Ching Lau v. Change*, 415 F.Supp. 627, 631–32 n.6 (E.D.Pa. 1976).