**DELAWARE VALLEY FACTORS, INC.**

v.

**COMA EXPORT, INC., et al.**

Civ. A. No. 78–759.

United States District Court,
E. D. Pennsylvania.

Jan. 19, 1982.

Edward Cohen, Philadelphia, Pa., for Delaware Valley Factors, Inc.

Robert H. Malis, Malis, Tolson & Malis, Philadelphia, Pa., for Coma Exports, Inc., Orris W. Saunders, Claire Saunders, Patrick J. McDonagh.

Thomas W. Murrell, III, Donald A. Scott, Morgan, Lewis & Bockius, Philadelphia, Pa., for Bank of America.

Victor A. Young, Andrew D. Bershad, Blank, Rome, Comisky & McCauley, Philadelphia, Pa., for Continental Bank.

Roberto Rivera-Soto, Fox, Rothschild, O'Brien & Frankel, Philadelphia, Pa., for Banco Desarollo Agropeucario.

## MEMORANDUM

GILES, District Judge.

The questions before the court are whether to grant summary judgment for plaintiff and whether to vacate default judgments entered against fourth-party defendant. For the reasons which follow, summary judgment will be granted, the default judgments will be vacated, and the fourth-party defendant will be dismissed for lack of personal jurisdiction.

### I. BACKGROUND

This action arises from an international sales transaction which went awry. Like

the typical international sale, this transaction was divided into many layers, each layer assigned to a party in a position to minimize the risk of mishap. *See* J. Honnold, *Cases and Materials on the Law of Sales and Sales Financing* 294 (1976). Unfortunately, a mishap at one layer triggered a lawsuit which now has cascaded to almost every other tier.

### A. Underlying Agreements

Two agreements underlie this action. The first is an international sales agreement, which can be divided into two transactions: a transaction in goods, and a transaction in documents. The second agreement involves a financial transaction between the seller and its bank.[1]

#### 1. Sales Agreement

##### a. Goods

The basic goods transaction was a sale of frozen chickens by Coma Exports, Inc., ("seller") a Florida corporation, to Corporacion de Mercadeo Agricola ("buyer") in Venezuela.[2] Seller engaged Shulman Air Freight, Inc., ("forwarder")[3] a New Jersey corporation, to ship the goods to Venezuela.[4]

##### b. Documents

Payment for the goods was arranged through an international letter of credit issued by buyer's Venezuelan bank, Banco de Desarrollo Agropecuario ("issuer"). The letter of credit provided for payment to seller against sight drafts for up to 90% of the invoice price, upon presentation of the drafts and other documents. The letter of credit transmitted to the Bank of America ("confirming bank") in New York, which confirmed the letter to seller.[5]

#### 2. Additional Financial Agreements

##### a. Domestic Letter of Credit

In connection with the sale and letter of credit, seller made two additional financial arrangements. First, in order to pay the supplier of the chickens, seller engaged the Continental Bank ("seller's bank") to issue a domestic "back-to-back" letter of credit to the supplier.[6] Seller's bank allegedly also was to advise seller concerning the documents necessary to obtain payment of the international letter of credit.

##### b. Loan

Second, seller took a loan from Delaware Valley Factors, Inc., ("lender") a Pennsylvania corporation. The amount of the loan was the face value of the international letter of credit. Seller assigned the letter of credit to lender as collateral for the loan. In addition, the loan was guaranteed to lender by three individuals ("guarantors").[7]

### B. Breakdowns in Underlying Transactions

These arrangements unraveled when problems occurred in both the documentary and goods transactions. The documentary difficulties arose when the confirming bank was presented with sight drafts and other documents, but dishonored the international letter of credit. The drafts and other documents were sent to the issuer, which in turn dishonored the the letter of credit. Issuer allegedly then gave the documents to buyer. If these documentary difficulties had remained the only problem in the transaction, the deal might have stayed out of court.

---

1. The following simplified description is culled primarily from the allegations of the pleadings, and is not intended to bind the parties at any later stage of this action.

2. Buyer is not a party to this action.

3. The forwarder was adjudicated bankrupt in November, 1978. Neither counsel for the forwarder nor counsel for the trustee informed this court of the bankruptcy until December, 1981.

4. Forwarder exported the chickens through Miami.

5. The letter appears to have been confirmed through another New York bank, Marine Midland Bank, which is not a party to this case.

6. The supplier, Mott, Inc., of Mississippi, is not a party. The domestic letter of credit evidently was paid without incident.

7. The guarantors are: Orris Saunders, a Florida citizen and seller's secretary-treasurer; Claire M. Saunders, a Florida citizen; and Patrick J. McDonagh, a New Jersey citizen and seller's president.

Ostensibly, buyer still owed seller enough such that when buyer paid seller, it, in turn, would have been able to repay its debt to lender.

Unfortunately, the goods transaction also broke down. Instead of the agreed-to frozen young chickens, buyer received industrial-grade hens. *Cf. Frigaliment Importing Co. v. B.N.S. International Sales Corp.*, 190 F.Supp. 116 (S.D.N.Y.1960) (Friendly, J.) (buyer wanted broiling or frying chickens, seller shipped stewing chickens or fowl). Buyer and seller eventually settled their dispute directly. Buyer accepted the shipment and paid approximately half the original contract price. As a result of the settlement, however, seller received only enough money to repay one-half of the loan.

### C. *Claims*

When lender did not receive full repayment of the loan, it brought this lawsuit against seller and guarantors for the balance. Those defendants counterclaimed against lender, and brought a third-party complaint against seller's bank, forwarder, and confirming bank, asserting that the third-party defendants improperly prepared documents or incorrectly advised seller about the documents. Alternatively, confirming bank is alleged to have dishonored incorrectly the letter of credit.

Seller's bank brought a counterclaim against seller and guarantors, raising seller's settlement with buyer as a bar to the third-party claims. Seller's bank also brought crossclaims against forwarder and confirming bank, arguing that they were responsible for any documentary errors. Confirming bank cross-claimed against seller's bank on the same ground. Finally, seller's bank and confirming bank brought separate fourth-party complaints against is-

suer, alleging that issuer became liable on the letter of credit when it gave the documents to buyer instead of returning them to confirming bank.[8]

The first two claims and last two claims are the subject of the motions before the court. Lender moves for summary judgment on its claim against seller and guarantors, and on their counterclaims. Issuer moves to vacate default judgments against it on the last two claims.

## II. MOTION FOR SUMMARY JUDGMENT

Lender contends that the record establishes absence of a material factual dispute for both its claim and the counterclaim. As to its claim, lender argues simply that the record shows an unpaid debt, that the record demonstrates that its only undertaking regarding the transactions was to make a loan, and that delivery of blank sight drafts to seller's bank was authorized by seller. Thus, lender contends there is no basis for a defense or counterclaim based on incorrect documentation. I agree.

Neither seller nor guarantors oppose the motion.[9] Opposition, however, is offered by seller's bank. While it disputes neither the existence nor amount of the debt, it argues that seller has a valid counterclaim or defense; the counterclaim that lender incorrectly forwarded blank sight drafts to seller's bank, and the defense that lender and seller settled the debt. *See generally Restatement (Second) of Contracts* §§ 278, 279, 281 (1981) (substituted performance, substituted contract, accord and satisfaction).

The blank sight drafts signed by lender eventually were filled out and presented to confirming bank to obtain payment for the

---

**8.** The parties' alignment can be summarized as follows:

LENDER<br>v.<br>SELLER and GUARANTORS<br>v.<br>SELLER'S BANK, CONFIRM<br>ING BANK, and FORWARDER<br>v.<br>ISSUER

**9.** On December 4th and December 11th, the court received letters from defendants' counsel and defendants, respectively, asking the court to defer a decision on the motion so that defendants could engage new counsel. A decision has been over-generously stayed for longer than requested. In any event, the motion is unopposed by defendants. *See* E.D.Pa.R.Civ. Pro. 20(c).

letter of credit. One reason given for dishonoring the letter of credit was that the drafts were filled out incorrectly. Thus, seller's bank argues that lender's submission of blank drafts "contributed to the set of circumstances or chain reaction that resulted in [seller's] inability to repay [lender's] advances." Answer of Additional Defendant Continental Bank to Motion for Summary Judgment at 5 [hereinafter cited as Seller's Bank's Brief].

This argument fails for three independent reasons. First, the deposition of Orris W. Saunders, seller's secretary-treasurer and a guarantor, establishes that lender was involved in this transaction only as a "financing agent." N.T. 22. Thus seller had no duty to insure that others provide proper documentation. Seller's bank is unable to point to any competent testimony creating a genuine factual issue whether lender had any duty to provide documentation. Second, as seller's bank recognizes, Seller's Bank's Brief, *supra*, at 5, Saunders' deposition also shows that lender's signing of blank drafts was approved by seller. N.T. 186–87. Because seller authorized lender's action, it cannot now set it up as a defense or counterclaim. Finally, mere "contribut[ion] to the set of circumstances" resulting in seller's failure to repay does not create legal liability for failure to repay. Seller's bank cites no authority showing that this "contribution" gives rise to a defense or counterclaim against lender.

Seller's bank's second argument is that lender settled its claim. Seller's bank contends that on deposition, one of its former officers, Anthony Alber, "testified that he recalled when negotiating a settlement in Venezuela with the buyers of the chickens and [seller], that [seller] had discussed the settlement price with [lender] before agreeing to the settlement." Seller's Bank's Brief, *supra*, at 5. Seller argues that it is disputed whether lender agreed to take the amount of settlement as full repayment of the loan.

This argument also is without merit. First, Alber's testimony does not meet the standard of Fed.R.Civ.Pro. 56(e) for showing that discussions actually took place between seller and lender. Alber said he believed that such discussions occurred, but "couldn't swear to it," N.T. 280, and that he understood that such discussions *would* take place. *Id.* 280–81. As to what actually took place between seller and lender, this testimony is neither made on personal knowledge, competent, nor admissible. *See* Fed.R.Civ.Pro. 56(e). Thus, it cannot create a genuine dispute. *Id.* Furthermore, even if seller did discuss, with its financial agent of twelve years, the terms of settlement between itself and buyer, mere discussion hardly constitutes acceptance of substituted performance.

Nothing else in the record has been pointed to as even arguably tending to show that lender did anything other than loan money, which was not repaid. Therefore, the undisputed facts show that the balance of the loan is owed to lender by seller and guarantors, and that there is no valid defense or counterclaim. Summary judgment therefore will be entered in favor of plaintiff and against defendants on all claims between those parties.

## III. *DEFAULT JUDGMENTS*

Default judgments were taken against issuer by confirming bank and seller's bank. Issuer asks that those judgments be vacated on the ground that the court lacks personal jurisdiction over issuer.[10]

Under Fed.R.Civ.Pro. 60(b)(4), the court may relieve a party from a judgment on the ground that a judgment is void.[11] A judg-

---

10. Issuer also offers excusable neglect as reason to vacate the judgments. Because of my disposition on the first ground, I need not rule on the additional argument.

11. The rule ordinarily applies only to final judgments. Fed.R.Civ.Pro. 60(b). *See generally* 7 J. Moore & J.D. Lucas, *Moore's Federal Practice* ¶ 60.20 (2d ed. 1979) [hereinafter cited as *Moore's*]; 11 C. Wright & A. Miller, *Federal Practice and Procedure* § 2852, at 145–46 (1973) [hereinafter cited as Wright & Miller]. The rule 60 standards, however, are made explicitly applicable to default judgments by Fed.R.Civ.Pro. 55(c), so they would seem to apply to non-final default judgments. Even if rule 60

ment issued by a court which lacks personal jurisdiction is void.[12] Thus, I must apply the test of rule 60(b)(4) in determining whether to vacate the judgments as void.[13]

Under the terms of rule 60(b)(4), the party attacking the judgment must move for relief "within a reasonable time" and show that the judgment is void. Furthermore,

Since a federal judgment that is void can be ... collaterally attacked [at any time], and since the judgment sustaining the collateral attack would have to be given effect in a subsequent 60(b)(4) motion to set the federal judgment aside as void, the "reasonable. time" limitation must generally mean no time limit, although there may be exceptional situations .... [14]

Since there is nothing exceptional about this situation, there is no time limit on the rule 60(b)(4) motion. Thus, to be relieved from judgment, issuer need show only lack of personal jurisdiction.

■ Under Pennsylvania law, personal jurisdiction extends as far as allowed by the United States Constitution. 42 Pa.Cons. Stat.Ann. § 5322(b) (Purdon 1981); see, e.g., Paolino v. Channel Home Centers, 668 F.2d 721 at 724 (3d Cir. 1981); Schwilm v. Holbrook, 661 F.2d 12, 14 (3d Cir. 1981); Compagnie des Bauxites de Guinea v. Insurance Co. of North America, 651 F.2d 877, 881 (3d Cir. 1981), cert. granted, —— U.S. ——, 102 S.Ct. 502, 70 L.Ed.2d 377 (1981). The Constitution requires that defendant's forum-related activities either: (1) give rise to the claim and pass minimum-contact analysis—specific jurisdiction; or

(2) constitute continuous and substantial affiliation with the forum—general jurisdiction. See Paolino, 668 F.2d at 724; Schwilm, 661 F.2d at 14; Compagnie des Bauxites, 651 F.2d at 889–91 (Gibbons, J., dissenting), cited in Schwilm, 661 F.2d at 14 (Gibbons, J.). See also World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291–94, 100 S.Ct. 559, 564–65, 62 L.Ed.2d 490 (1980); DeJames v. Magnificence Carriers, Inc., 654 F.2d 280, 284–86 (3d Cir. 1981).

Seller's bank and confirming bank argue that issuer contacted this forum in two respects, each sufficient to sustain personal jurisdiction. The first set relates to the letter of credit. The second is associated with a large loan unrelated to the events of this case.

In the first area, the record establishes at most that the letter of credit was issued by the Venezuelan issuer for the Venezuelan buyer at the behest of the Venezuelan buyer. It was payable by the New York confirming bank to buyer at a New York address. In connection with both the letter of credit and the settlement of the goods transaction, the Venezuelan issuer dealt exclusively with the New York confirming bank—it had no direct dealings with seller's bank, seller, or lender.

In a similar case, Empire Abrasive Equipment Corporation v. H. H. Watson, Inc., 567 F.2d 554 (3d Cir. 1977), a letter of credit was issued by a Rhode Island bank for a Rhode Island seller. It was payable to the Pennsylvania buyer in Rhode Island. The buyer had no direct dealings with the bank.

standards generally do not apply to non-final defaults, the test for relief from a void non-final judgment would be identical to the rule 60(b)(4) test for the reason given in the text infra at note 14.

12. See, e.g., 7 Moore's, supra note 11, ¶ 60.-25[2]; id. at 307 ("[A] judgment by default for want of appearance is void and subject to collateral attack if the rendering court lacks the requisite jurisdiction over the defendant that is needed for the type of judgment, i.e., in personam ....") (emphasis in original); 11 Wright & Miller, supra note 11, § 2862.

13. This seemingly self-evident point is belabored only because the parties have tried to apply the different tests of Fed.R.Civ.Pro. 60(b)(1), which allows relief from judgment on the grounds of mistake, inadvertence, surprise, or excusable neglect. The citations to, and briefing and argument of, other requirements, e.g., lack of prejudice to nonmoving party, showing of excusable neglect, are inapposite. See, e.g., 11 Wright & Miller, supra note 11, § 2862, at 197–98.

14. 7 Moore's supra note 11, ¶ 60.25[4], at 315 (footnotes omitted); accord, 11 Wright & Miller, supra note 11, § 2862, at 197–98.

*Id.* at 558. "The bank did nothing in Pennsylvania." *Id.* The court held these contacts insufficient to establish personal jurisdiction over the bank in Pennsylvania:

> We do not think that by issuing a letter of credit for a Rhode Island customer, calling for performance in Rhode Island, the bank can be said to have subjected itself to the adjudicatory authority of Pennsylvania with respect to its obligations under the letter of credit solely because the beneficiary was a Pennsylvania corporate resident. We agree with the District Court that subjecting the bank to the jurisdiction of a Pennsylvania forum would offend traditional notions of fair play and substantial justice.[15]

▮ Here, the letter of credit was issued by a foreign bank for a foreign customer, payable to an out-of-state corporation at an out-of-state address by an out-of-state bank. Subjecting the Venezuelan issuer to the jurisdiction of this forum would be at least as offensive as subjecting the *Empire Abrasive* issuer to Pennsylvania jurisdiction. Therefore, the Venezuelan issuer's alleged connections with Pennsylvania regarding the letter of credit do not pass the minimum-contacts test.

Regarding the loan contacts, the record shows that issuer, through an intermediary, borrowed three-million dollars from a Pennsylvania bank. The loan was repayable through three one-million dollar promissory notes. Under their terms, the notes could be sued on only in New York or Venezuela. Seller's bank and confirming bank argue that the loan dealings meet the minimum-contacts test. *See, e.g.,* Memorandum of Law of Bank of America in Opposition to Motion to Strike Default at 19. This is true, but irrelevant. "Minimum contacts analysis is inappropriate where defendant's forum activities do not give rise to the claim. Instead, when pressing a non-forum-related claim, plaintiff must demonstrate that the defendant maintained 'continuous and substantial' forum affiliation." *Schwilm,* 661 F.2d at 14 (citing *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945)); *see, Paolino,* 668 F.2d at 724. The loan activity and single loan, which itself could not be sued on in Pennsylvania, does not constitute continuous and substantial affiliation with Pennsylvania such that the Venezuelan bank is generally amenable to any suit here.

Because issuer lacks the requisite contacts with this forum, the court cannot exercise personal jurisdiction. The default judgments must be vacated, and the issuer dismissed. An appropriate order follows.

## ORDER

AND NOW, this 19th day of January, 1982, it is hereby ORDERED that:

1. JUDGMENT is entered on plaintiff's claim in favor of plaintiff Delaware Valley Factors, Inc., and against defendants Coma Export, Inc., Orris W. Saunders, Claire M. Saunders, and Patrick J. McDonagh in the amount of $115,705.14. JUDGMENT is entered in favor of plaintiff and against defendants on defendants' counterclaim.

2. The default judgments entered against fourth-party defendant Banco de Desarrollo Agropecuario are VACATED, and the fourth-party defendant is DISMISSED without prejudice for lack of jurisdiction.

3. All proceedings on all claims against third-party defendant Shulman Air Freight, Inc., are STAYED.

4. Within fifteen days after entry of this order, third-party plaintiffs Coma Export, Inc., Orris W. Saunders, Claire M. Saunders, and Patrick J. McDonagh shall, through an attorney of record, file a statement that each will prosecute its claims against other parties. Failure to comply timely may result in dismissal for failure to prosecute.

---

**15.** 567 F.2d at 558. *See Amigo Foods Corp. v. Marine Midland Bank,* 61 A.D.2d 896, 402 N.Y. S.2d 406 (1978), *aff'd mem.,* 46 N.Y.2d 855, 387 N.E.2d 226, 414 N.Y.S.2d 515 (1979); *see also Van Schaack & Co. v. District Court,* 189 Colo. 145, 538 P.2d 425 (1975) (Colorado has personal jurisdiction over Kansas bank which issued letter of credit to Colorado company in connection with Colorado real estate-transaction). *See generally* Annot., 9 A.L.R.4th 661 (1981).

5. All discovery shall be completed on or before March 22, 1982.

6. On or before April 5, 1982, third-party plaintiffs shall file a pretrial memorandum (pursuant to Local Rule 21(c)), as well as proposed points for charge, in duplicate, each charge on a separate page. Failure to comply timely may result in dismissal for failure to prosecute.

7. On or before April 19, 1982, third-party defendants shall file their pretrial memoranda (pursuant to Local Rule 21(c)), as well as proposed points for charge, in duplicate, each charge on a separate page.

8. A final pretrial conference will be held on May 4, 1982, at 4:30 p. m., in room 8613.

9. The case is deemed ready for trial at any time after the final pretrial conference. Once listed in the published trial pool, the parties shall be ready to proceed on telephone notice.