746 F.2d 208
 DOLLAR SAVINGS BANK, a Pennsylvania Corporation, Appellee,
v.
FIRST SECURITY BANK OF UTAH, N.A., not in its individual
capacity, but solely as Trustee under a Master Trust
Agreement dated as of October 1, 1976, a Utah corporation
and Farm Fans, Inc., an Indiana corporation, and Royalnest
Leasing Corp., a New York corporation.
Appeal of FIRST SECURITY BANK OF UTAH, N.A.
 No. 84-3063.
 United States Court of Appeals,
Third Circuit.
 Argued Aug. 14, 1984.
Decided Oct. 17, 1984.
 
 Robert L. Potter (argued), Jon G. Hogue, Titus, Marcus & Shapira, Pittsburgh, Pa., for appellant.
 Donald J. Balsley, Jr. (argued), Wick, Rich, Fluke & Streiff, Pittsburgh, Pa., for appellee.
 Before ALDISERT, Chief Judge, WEIS, Circuit Judge, and RE, Judge.*
 OPINION OF THE COURT
 WEIS, Circuit Judge.
 
 
 1
 In this appeal from a proceeding to foreclose on collateral, the issue is whether a district court has personal jurisdiction over an out of state bank because it has received a loan from a bank in the forum district. We conclude that the minimum contacts required for due process have not been established when the non-resident bank does no more than borrow from and repay a loan to the forum bank by wire transfer. Accordingly, we hold that the district court lacked jurisdiction over defendant.
 
 
 2
 Plaintiff sought a preliminary injunction to gain possession of shipping containers that had been given as security for a loan. The district court granted the injunction against the borrower, defendant Utah bank, but dismissed two other defendants for lack of personal jurisdiction.
 
 
 3
 As trustee for a group of investors, the First Security Bank of Utah borrowed money in a series of transactions from May 1977 through June 1978 from the Dollar Savings Bank of Pittsburgh and the Presbyterian Ministers Fund of Philadelphia. As part of the arrangements, the United States Trust Company of New York acted as trustee for the lenders.
 
 
 4
 The Utah bank used the funds to purchase refrigerated shipping containers and gave security interests in them to the United States Trust Company. When the Utah bank defaulted in payments, the United States Trust Company assigned the security interest to Dollar.[1]
 
 
 5
 Intending to sell the containers, Dollar filed the complaint to foreclose on the collateral. Dollar asserted its need for immediate possession as well as the titles because a prospective purchaser for the containers had been found and the sale had to be completed quickly. If the matter were delayed, Dollar's opportunity would be lost. The Utah bank moved to dismiss the complaint for lack of personal jurisdiction. The district court denied the motion, finding "sufficient evidence of contact upon which to base jurisdiction."
 
 
 6
 Because a prompt decision was necessary, the parties did not fully develop the record on the jurisdictional issue. However, several affidavits and exhibits in the record provide some basic facts.
 
 
 7
 The Utah bank negotiated the loans by telephone with Dollar's law firm, Mudge, Rose, Guthrie & Alexander, in New York City. No personnel of the Utah bank traveled to Pennsylvania in connection with the transaction. The notes payable to Dollar and the security agreements with the United States Trust Company were executed by Utah bank officers outside Pennsylvania. Although Dollar executed certain documents at its Pittsburgh headquarters, none of the agreements provide for the application of Pennsylvania law or the exercise of jurisdiction by Pennsylvania courts. The containers were located at various places in the United States outside of Pennsylvania.
 
 
 8
 Before the default, the Utah bank had made payments on the loan to Dollar by wire transfers to Pittsburgh but the supporting documents were sent by the Utah bank to the United States Trust Company in New York. The Utah bank is not licensed to do business in Pennsylvania and has never maintained an office, telephone listing, or bank account in that state. Moreover, it has never solicited business there and has no employees in the state. The Utah bank has, however, acted as a trustee for certain chattels located in Pennsylvania, but that transaction is unrelated to the one sued on by Dollar.
 
 
 9
 After determining that it had jurisdiction, the district court directed the Utah bank to deliver the collateral to Dollar. On appeal, the Utah bank argues that it had insufficient contacts with Pennsylvania to be subject to personal jurisdiction in the district court, and accordingly should have been dismissed. Plaintiff contends that, because the secured notes were delivered in Pennsylvania, funds were transferred from and repaid in the state, and the default "impacted" Dollar within the state, enough has been shown to satisfy due process standards.
 
 
 10
 Until recently the question of personal jurisdiction over a national bank was not difficult because the venue statute permitted suit only in the district in which the bank was established. See 12 U.S.C. Sec. 94 (1976).[2] This statute received wide criticism and Congress amended its provisions in 1982.[3] See Citizens & Southern Nat'l Bank v. Bougas, 434 U.S. 35, 39, 98 S.Ct. 88, 91, 54 L.Ed.2d 218 (1977); Radzanower v. Touche Ross & Company, 426 U.S. 148, 158, 96 S.Ct. 1989, 1995, 48 L.Ed.2d 540 (1976) (Stevens, J., dissenting); Michigan Nat'l Bank v. Robertson, 372 U.S. 591, 594, 83 S.Ct. 914, 915, 9 L.Ed.2d 961 (1963) (Black, J., concurring); Ronson Corporation v. Liquifin Aktiengesellschaft, 483 F.2d 852 (3d Cir.1973). See also, Steinberg, Waiver of Venue under the National Bank Act: Preferential Treatment for National Banks, 62 IOWA L.REV. 129 (1976).
 
 
 11
 The current limited venue provision applies only when the Federal Deposit Insurance Corporation has been appointed as a receiver for a national bank. The Senate Report commenting on the 1982 legislation explained that technological developments "have now surpassed a justification for the old law. The likelihood of disruption to a bank is now no greater than to any other corporation, while the burden imposed on plaintiffs by the special venue law may be substantial." S.Rep. No. 536, 97th Cong., 2d Sess. 3, reprinted in 1982 U.S. Code Cong. & Ad.News 3054, 3082.
 
 
 12
 No longer sheltered by statute, national banks may now be sued as any other corporation.[4] See 28 U.S.C. Sec. 1391(c). Thus, in this diversity case, the district court would have jurisdiction over the defendant only if a Pennsylvania state court would have that power.
 
 
 13
 The Pennsylvania long arm statute, 42 Pa.Cons.Stat.Ann. Sec. 5322(b) (Purdon 1981), allows a court to exercise jurisdiction over a person "to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States." See also Fed.R.Civ.P. 4(e). The reach of the statute is coextensive with the due process clause of the federal Constitution.
 
 
 14
 Although there are distinctions between the various forms of nonresident jurisdiction, the Supreme Court has made it clear that "all assertions of state-court jurisdiction must be evaluated according to the standard set forth in International Shoe and its progeny." Shaffer v. Heitner, 433 U.S. 186, 212, 97 S.Ct. 2569, 2584, 53 L.Ed.2d 683 (1977). (quasi in rem). See also U.S. Industries, Inc. v. Gregg, 540 F.2d 142 (3d Cir.1976), cert. denied, 433 U.S. 908, 97 S.Ct. 2972, 53 L.Ed.2d 1091 (1977) (quasi in rem); Jonnet v. Dollar Savings Bank, 530 F.2d 1123, 1130 (3d Cir.1976) (Gibbons, J., concurring) (foreign attachment statute). In International Shoe, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), the Court said that the demands of due process "may be met by such contacts of the corporation with the state of the forum as make it reasonable, in the context of our federal system of government, to require the corporation to defend the particular suit which is brought there." Id. at 317, 66 S.Ct. at 158.
 
 
 15
 Personal jurisdiction over a nonresident defendant may be asserted in two situations. The first, "general jurisdiction," exists when the claim does not arise out of or is unrelated to the defendant's contacts with the forum. See Helicopteros Nacionales de Colombia, S.A. v. Hall, --- U.S. ----, ---- nn. 8 & 9, 104 S.Ct. 1868, 1872 nn. 8 & 9, 80 L.Ed.2d 404 (April 24, 1984); Rush v. Savchuk, 444 U.S. 320, 100 S.Ct. 571, 62 L.Ed.2d 516 (1980); Time Share Vacation Club v. Atlantic Resorts, Ltd., 735 F.2d 61 (3d Cir.1984); Hendrickson v. Reg O Company, 657 F.2d 9 (3d Cir.1981). The second, "specific jurisdiction," is invoked when the claim is related to or arises out of the defendant's contacts with the forum. See Keeton v. Hustler Magazine, --- U.S. ----, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984); Calder v. Jones, --- U.S. ----, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984); World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); Reliance Steel Products Co. v. Watson, Ess, Marshall and Enggas, 675 F.2d 587 (3d Cir.1982).[5]
 
 
 16
 The record as it currently stands is insufficient to support general jurisdiction. Therefore, we devote our attention to whether specific jurisdiction is established through sufficient contacts with Pennsylvania in connection with the loans from Dollar to the Utah bank.
 
 
 17
 Case law reveals an occasional failure to distinguish between the requirements for specific, as contrasted with general jurisdiction. As noted in Schwilm v. Holbrook, 661 F.2d 12 (3d Cir.1981), the minimum contacts analysis is inappropriate when the defendant's forum activities do not give rise to the claim. Id. at 14. In instances of general jurisdiction, a plaintiff must demonstrate that the defendant maintained continuous and substantial forum affiliations.
 
 
 18
 When the plaintiff's interest is in litigating a claim arising out of a single transaction in a forum where the defendant has no continuing presence--specific jurisdiction--the focus must be on minimum contacts. Paolino v. Channel Home Centers, 668 F.2d 721 (3d Cir.1981). "[A] 'relationship among the defendant, the forum, and the litigation' is the essential foundation of in personam jurisdiction." Helicopteros Nacionales de Colombia S.A., --- U.S. at ---- 104 S.Ct. at 1872 (quoting Shaffer v. Heitner, 433 U.S. 186, 204, 97 S.Ct. 2569, 2579, 53 L.Ed.2d 683 (1977)).
 
 
 19
 In World-Wide Volkswagon Corp. v. Woodson, the plaintiff alleged "specific jurisdiction" over the defendants. The only contact the defendants had with the forum state was that the auto they had sold in New York to the New York resident plaintiffs collided with another vehicle in the forum state. The Court noted the absence of contacts with the forum other than the "fortuitous circumstance" of the accident.
 
 
 20
 The Court agreed with the plaintiff's assertion that the car's unique nature made it foreseeable that it would travel into the forum state. However, for purposes of personal jurisdiction, the Court observed that "the foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum State." Rather, foreseeability is limited to ascertaining whether "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." 444 U.S. at 297, 100 S.Ct. at 567.
 
 
 21
 In Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), a nonresident trustee, which had received instructions by mail from the settlor, was held not to be subject to in personam jurisdiction. The Court stated, "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Id. at 253, 78 S.Ct. at 1240. In that case, the Court held that the settlor's execution in the forum state of powers of appointment did not establish "a substantial connection with the contract on which this suit is based." Id. at 253, 78 S.Ct. at 1239. The Hanson opinion carefully distinguished McGee v. International Life Insurance Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), by noting that the trustee did not perform any acts in Florida bearing a relationship to the trust agreement as did the solicitation in McGee. Id. at 252, 78 S.Ct. at 1239.
 
 
 22
 In McGee the Court applied its most relaxed standard of contacts--one which it has steadfastly declined to extend. See Helicopteros Nacionales de Columbia, S.A. v. Hall, --- U.S. ----, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984): World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); Rush v. Savchuk, 444 U.S. 320, 100 S.Ct. 571, 62 L.Ed.2d 516 (1980); Shaffer v. Heitner, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977); Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). In McGee, a California resident purchased a life insurance policy after being solicited by mail by a nonresident carrier. The insurance company never solicited or conducted any business in California apart from that one policy. The Court concluded that the nonresident company was subject to jurisdiction of the California courts. In reaching its decision, the Court noted the existence of a "state statute which subjects foreign corporations to suit in California on insurance contracts." McGee, 355 U.S. at 221, 78 S.Ct. at 200.
 
 
 23
 In Reliance Steel Products v. Watson, Ess, Marshall and Enggas, 675 F.2d 587 (3d Cir.1982), we discussed the requirements for jurisdiction when the claim arises from forum related activity. There, we held that the delivery of legal advice by a nonresident attorney over the telephone, followed by a bill delivered by mail to the client in Pennsylvania, did not constitute cognizable activity within the forum. That the defendant was listed in a legal directory circulated in the forum state and the client was referred by a Philadelphia firm were not enough additional forum activity to establish jurisdiction.
 
 
 24
 Empire Abrasive Equipment Corp. v. H.H. Watson, Inc., 567 F.2d 554 (3d Cir.1977), held that the district court in Pennsylvania lacked jurisdiction over a Rhode Island bank that had issued a letter of credit at the request of a Rhode Island firm in favor of a Pennsylvania company, payable on presentation of drafts in Rhode Island. Although the manufacture and sale of goods by the Pennsylvania beneficiary established that state's interest in the dispute between buyer and seller, the bank did nothing in the state and in no way invoked the protection of its law. In those circumstances, subjecting the bank to jurisdiction of a Pennsylvania forum would offend International Shoe's traditional notions of fair play and substantial justice.
 
 
 25
 With this background, we examine the circumstances of the case at hand. The record shows a debtor-creditor relationship evidenced by a note signed by defendant in Utah and transmitted to plaintiff through its agents in New York. The funds originated in Pittsburgh, and apparently were transmitted to the Utah bank by wire transfer, as were the repayments to Dollar. The collateral transaction securing the loan was concluded in New York with a New York bank as trustee for plaintiff and was memorialized in agreements which stated that New York and Utah law were to be applied.
 
 
 26
 Thus, the only contacts are that the funds originated and were repaid in the forum state. The record does not show that the Utah bank had any other activity in Pennsylvania. Dollar's assertion that the default caused an economic impact in the state is of little weight. An effect would be felt even if the payments were made to the plaintiff's agent in any other state. Moreover, if incidental economic detriment as such furnishes a contact for jurisdictional purposes, then every monetary claim would per se furnish the predicate for personal jurisdiction over a nonresident debtor. See Kulko v. California Superior Court, 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978); Nu-Way Systems of Indianapolis v. Belmont Marketing, Inc., 635 F.2d 617 (7th Cir.1980). It should be noted that in this commercial transaction, we are not concerned with the "effects doctrine" as applied to a tort claim. See Keeton v. Hustler Magazine, --- U.S. ----, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984); Calder v. Jones, --- U.S. ----, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984).
 
 
 27
 Dollar argues that because this loan was furnished by a Pennsylvania bank, the borrower could expect to be "haled into court" there. If a debtor accepts money from a lender in a different state, the argument goes, it would not be surprising that on default the borrower would be required to defend in the forum where the funds originated. At first blush, there is some appeal to that reasoning. However, it is equally arguable that when a loan is made to a nonresident he would expect to be brought to court only in his domiciliary state.
 
 
 28
 The status of the parties to this case, both substantial banks who transact business beyond their respective states, tends to blur the rationale for the underlying rule of law. With these litigants, one may legitimately inquire why fair play requires the plaintiff to go to the defendant's domicile. Reliance on the traditional Roman law maxim, actor sequitur forum rei (plaintiff must pursue defendant in his forum), although not without some criticism, has the virtue of giving certainty to commercial transactions. See World-Wide Volkswagen v. Woodson, 444 U.S. at 297, 100 S.Ct. at 567 (1980); Chelsea House Publishers v. Nicholstone Book Bindery, 455 U.S. 994, 102 S.Ct. 1623, 71 L.Ed.2d 856 (1982) (White, J., the Chief Justice and Powell, J., dissenting from denial of certiorari); Lakeside Bridge & Steel Co. v. Mountain State Construction Co., Inc., 445 U.S. 907, 100 S.Ct. 1087, 63 L.Ed.2d 325 (1980) (White and Powell, JJ., dissenting from denial of certiorari); Iowa Electric & Power Co. v. Atlas Corporation, 445 U.S. 911, 100 S.Ct. 1090, 63 L.Ed.2d 327 (1980), (White and Powell, JJ., dissenting from denial of certiorari, Blackmun, J., would grant certiorari). In any event, the Supreme Court has foreclosed debate on the issue by emphasizing that it is the defendant's and not the plaintiff's contacts with the forum that must be evaluated. See Rush v. Savchuk, 444 U.S. 320, 100 S.Ct. 571, 62 L.Ed.2d 516 (1980).
 
 
 29
 But the status of the parties should not be determinative. It is questionable judicial policy to apply a different jurisdictional rule to individuals than to corporations, to small enterprises than to large ones. To indulge in such ad hoc determinations creates confusion where there should be certainty and results in extensive and expensive skirmishing before ever reaching the merits. Cf. Biggans v. Bache Halsey Stuart Shields, 638 F.2d 605, 611 (3d Cir.1980) (Weis, J., dissenting).[6]
 
 
 30
 Dollar's arguments are not persuasive. We are left with the facts that the Utah bank concluded its negotiations with a New York law firm, delivered security interests to a New York trustee, and had no direct dealings with Dollar other than wire transfers of payments. These circumstances created no expectation of submission to the jurisdiction of Pennsylvania courts. Moreover, they do not constitute purposeful availing of the privilege of conducting activity within the forum state. Kulko v. California Superior Court, 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978).[7] In sum, we are convinced that the record in this case fails to establish the minimum contacts necessary to secure personal jurisdiction over the defendant Utah bank.
 
 
 31
 As noted earlier, no discovery was permitted in this case because of the pressing time problem. Plaintiff has represented to us that it expects to establish a continuing presence of the Utah bank in Pennsylvania through its participation in other activities. We do not foreclose the possibility that discovery might develop such evidence when the case returns to the district court. Moreover, if ultimately no jurisdiction in Pennsylvania is established, we do not preclude the transfer of this case to a district in which the litigation could have been brought originally. See 28 U.S.C. Sec. 1404(a) (1982); Schwilm v. Holbrook, 661 F.2d at 15, 16.
 
 
 32
 We conclude that the district court should not have proceeded to the merits since Dollar failed to establish personal jurisdiction over the Utah bank in Pennsylvania. Accordingly, the preliminary injunction will be vacated, and the case remanded to the district court for further proceedings.
 
 
 
 *
 The Honorable Edward D. Re, Chief Judge, United States Court of International Trade, sitting by designation
 
 
 [1]
 In view of our disposition of this case, we need not detail the reasons for the default nor the complicated arrangements between the Dollar Bank, Presbyterian Ministers Fund, Utah bank as trustee, and Farm Fans, Inc. and Royalnest Leasing Corporation as equitable owners of the containers. The latter two corporations were also named as defendants but, because they had no direct contacts with Dollar in Pennsylvania, the district court dismissed them from the suit. No appeal has been taken from that ruling
 
 
 [2]
 12 U.S.C. Sec. 94 (1976). Before the 1982 amendment the statute read:
 "Suits, actions and proceedings against any association under this chapter may be had in any district or Territorial court of the United States held within the district in which such association may be established, or in any State, county, or municipal court in the county or city in which said association is located having jurisdiction in similar cases."
 
 
 [3]
 12 U.S.C. Sec. 94 (1982) reads:
 "Any action or proceeding against a national banking association for which the Federal Deposit Insurance Corporation has been appointed receiver, or against the Federal Deposit Insurance Corporation as receiver of such association, shall be brought in the district or territorial court of the United States held within the district in which that association's principal place of business is located, or, in the event any State, county, or municipal court has jurisdiction over such an action or proceeding, in such court in the county or city in which that association's principal place of business is located."
 
 
 [4]
 In an excess of caution perhaps we should observe that we do not have a situation where Congress has given federal courts the power to summon defendants from anywhere in the country. Here we have a diversity case where the federal district court has personal jurisdiction over the defendant only if a state court would have that power
 
 
 [5]
 See also Lilly, Jurisdiction over Domestic and Alien Defendants, 69 VA.L.REV. 85 (1983); Brilmayer, How Contacts Count: Due Process Limitations on State Court Jurisdiction, 1980 SUP.CT.REV. 77 (1980); von Mehren & Trautman, Jurisdiction to Adjudicate: A Suggested Analysis, 79 HARV.L.REV. 1121 (1966); Note, Retracting the Long Arm: World-Wide Volkswagen Corp. v. Woodson and Rush v. Savchuk, 22 B.C.L.REV. 385 (1981)
 
 
 [6]
 At times, the forum state may have an interest in not discouraging foreign purchasers from dealing with resident sellers for fear of the possibility of litigation in distant courts. Whittaker Corporation v. United Aircraft Corp., 482 F.2d 1079, 1085 (1st Cir.1973). Similarly, nationwide solicitation of credit card accounts by banks would be severely injured by permitting jurisdiction over subscribers at the banks' domicile. Nor is it likely that mail order houses would find it to their advantage to insist upon "dragooning" their individual customers into courts far from their homes. Empire Abrasive Equipment Corporation v. H.H. Watson, Inc., 567 F.2d at 558. See also National Equipment Rental, Ltd., v. Szukhent, 375 U.S. 311, 318, 84 S.Ct. 411, 418, 11 L.Ed.2d 354 (1964) (Black, J., dissenting)
 
 
 [7]
 Although we do not rely on it as a ground for decision here, it might well be argued that since the restrictive venue provision of 12 U.S.C. Sec. 94 (1976) was in effect at the time the loans were negotiated, the Utah bank's expectation at that time would have been that it could be sued only in its home district, not elsewhere. At the time of default, however, the venue provision had been changed