Wanda SCHMIDT and Joseph Schmidt, h/w

v.

**LEADER DOGS FOR THE BLIND, INC.**

Civ. A. No. 81–1951.

United States District Court, E. D. Pennsylvania.

July 15, 1982.

Jeffrey Gloss, Philadelphia, Pa., for plaintiffs.

John E. Salmon, La Brum & Doak, Philadelphia, Pa., for defendant.

## MEMORANDUM and ORDER

SHAPIRO, District Judge.

### STATEMENT OF FACTS

Leader Dogs for the Blind, Inc. ("Leader Dogs"), defendant in this diversity case, has moved to dismiss for lack of *in personam* jurisdiction, or in the alternative to trans-

fer. There having been full discovery on these issues, the motion to transfer pursuant to 28 U.S.C. § 1404(a) will be granted.

Plaintiffs, Wanda and Joseph Schmidt, are citizens of the Commonwealth of Pennsylvania. Leader Dogs, a non-profit organization incorporated in Michigan, provides training and guide dogs free of charge to qualified blind applicants. Mrs. Schmidt travelled to Rochester, Michigan in June, 1979 to attend one of defendant's four-week training programs. Mrs. Schmidt's application had been sponsored by the Northampton Township (Pennsylvania) Lions Club. Plaintiffs allege that in the course of this training, Mrs. Schmidt fell, injured both feet, and was negligently treated at Leader Dogs' infirmary and a nearby hospital. Complaint, ¶ 18.

Plaintiffs originally brought actions in federal courts in Pennsylvania and Michigan against Leader Dogs, the hospital to which Mrs. Schmidt was taken, and the physician and radiologist who treated her there.* However, in this action plaintiffs subsequently consented to dismiss all defendants other than Leader Dogs for lack of personal jurisdiction here; therefore, plaintiffs seek to maintain an action against all the original defendants in Michigan and against Leader Dogs alone in Pennsylvania. Counts I and V of plaintiffs' Complaint assert tort claims against Leader Dogs; Counts IX and X allege a breach of a contract between Leader Dogs and the Northampton Township Lions Club for the benefit of Mrs. Schmidt.

Leader Dogs, since its incorporation in 1939, has trained students from most states and from several foreign countries, but its training facilities have always been in Michigan only. Defendant's Answers to Plaintiffs' Interrogatories, Second Set, Nos. 2–3. Of its 3,753 graduates, three hundred have come from Pennsylvania (slightly under eight percent of the total number), *Id.*, Nos. 40–41; 161 are still alive and residing in Pennsylvania, and remain subject to contractual obligations assumed on receiving leader dogs. Defendant's Amended Answers to Plaintiffs' Interrogatories, Second Set, No. 78. These contracts were executed in Michigan. *Id.*

The standard conditions for obtaining a dog prohibit mistreating the dog, breeding it, having it sterilized, or using it to guide persons other than its owner. A dog must be returned to defendant upon death of its owner. *See*, Affidavit of Robert Burke, Exhibit "A" ("Transfer of Title and Placement Agreement"). Other than the contract regarding each of the leader dogs, defendant's contact with a program graduate is limited to an annual Christmas card and counselling at the graduate's request. Defendant's Answers, *supra*, Nos. 61; 13, 58.

Lions clubs have contributed financial support to defendant and have solicited applicants for leader dogs in Pennsylvania. *See*, Defendant's Answers, *supra*, No. 37. For the last five fiscal years, Pennsylvania clubs have contributed over $100,000 annually to defendant's general operating fund, *id.*; the record does not disclose defendant's total budget. Defendant has no contractual obligations to the Lions clubs, but it entertains club officials at its Michigan facility and provides local clubs with speakers or other information upon request. *Id.*, Nos. 63(d), 64(d). Leader Dogs also sends copies of correspondence with applicants to Lions Club sponsors, Defendant's Amended Answers, *supra*, No. 47 (copies of correspondence attached), and relies on Lions Club sponsors to assist graduates in returning dogs when necessary, *see*, Affidavit of Jeannette Susan Howells.

Defendant has not paid for advertising in this state but seeks radio broadcast of unpaid public service announcements. Defendant has mailed taped messages for this purpose to 177 radio stations in Pennsylvania in the last five years, but whether these messages have been broadcast and, if so, with what frequency, is unknown. Defendant's Amended Answers, *supra*, No. 74(d).

---

* A copy of plaintiff's Michigan Complaint is attached to defendant's brief in support of transfer as "Exhibit C." Although not made of record by affidavit, plaintiffs have acknowledged at oral argument that it is a true and correct copy.

## PERSONAL JURISDICTION

Plaintiffs claim jurisdiction over Leader Dogs under the Pennsylvania long-arm statute which may be applied in accordance with Fed.R.Civ.P. 4(e) so long as consistent with "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945); *see, Koenig v. International Brotherhood of Boilermakers*, 284 Pa.Super. 558, 566, 426 A.2d 635, 639 (1980).

In determining whether long-arm jurisdiction may be exercised in a particular case, we must follow a two-step process. First, we determine whether the cause of action arises from defendant's activities within the forum state. If so, under 42 Pa.C.S.A. § 5322, plaintiff need show only minimum contacts of the defendant with the forum. *Id.*, § 5322(b); *see, Schwilm v. Holbrook*, 661 F.2d 12, 14 (3d Cir. 1981); *Union National Bank of Pittsburgh v. L. D. Pankey Institute*, 284 Pa.Super. 537, 542, 426 A.2d 624, 627 (1980). Pennsylvania case law evaluates minimum contacts under the three-part test formulated in *Proctor & Schwartz, Inc. v. Cleveland Lumber Co.*, 228 Pa.Super. 12, 19, 323 A.2d 11, 15 (1974). Second, if the claim is *not* forum-related, plaintiffs must show that the defendant corporation carries on "a continuous and systematic part of its general business within this Commonwealth." 42 Pa.C.S.A. § 5301(a)(2)(iii); *see, Schwilm, supra* at 14; *Union National Bank*, 284 Pa.Super. at 542, 426 A.2d at 627; *Goff v. Armbrecht Motor Truck Sales, Inc.*, 284 Pa.Super. 544, 549, 426 A.2d 628, 630 (1980); *Koenig*, 284 Pa. Super. at 568, 426 A.2d at 640.

Plaintiffs' tort and contract claims do not arise from defendant's activities in this forum. Plaintiffs admit that the cause of action arose in Michigan; Plaintiffs' Reply to Defendant's Motion to Transfer, ¶ 3. Indeed, their tort claims assert that Mrs. Schmidt's injury was the proximate result of Leader Dogs' negligence while under its care in Michigan. Complaint, Counts I and V. Any pain and suffering experienced by Mrs. Schmidt after her return to Pennsylva-nia also would not constitute harm "caused in the Commonwealth" under 42 Pa.C.S.A. § 5322(a)(4); *Hilferty v. Neesan*, 506 F.Supp. 218, 220 (E.D.Pa.1980).

Plaintiffs allege breach of a contract between Leader Dogs and the Lions Club of Northampton Township for the benefit of Wanda Schmidt (Complaint, Count IX) but do not otherwise allege the existence of a legally enforceable obligation for the specific benefit of Mrs. Schmidt. The obligation to a third party must affirmatively appear in a contract to entitle that party to recover under it. *Spires v. Hanover Fire Ins. Co.*, 364 Pa. 52, 57, 70 A.2d 828, 831 (1950). Here, the relationship between the Lions Club and Leader Dogs is one of general support and cooperation to which no legal obligations to each other or third parties attach. But even assuming a contract for plaintiff's benefit, it would not be sufficiently forum-related to justify asserting jurisdiction over the defendant in Pennsylvania. Michigan, where Leader Dogs accepted Mrs. Schmidt's application, would be the place of execution as well as the place of performance and breach. Because none of plaintiffs' claims against Leader Dogs is forum-related, we need not inquire into the purposefulness or substantiality of defendant's forum activities under the *Proctor & Schwartz* "minimum contacts" analysis.

Therefore, plaintiffs may assert personal jurisdiction over Leader Dogs only if defendant's general activities in Pennsylvania are both "continuous and substantial." *Schwilm, supra* at 14. Leader Dogs receives support from and provides services to Pennsylvania Lions clubs; Leader Dogs enters into long-term contracts with Pennsylvania graduates of its programs; Leader Dogs sends tapes about its work to numerous Pennsylvania radio stations for broadcast as public service announcements; four Pennsylvania residents either represent Leader Dogs in the state or serve on its governing boards; and Leader Dogs may provide counselling services to Pennsylvania residents who have completed the Michigan training program. In applying this "general" as opposed to "minimum" contacts anal-

ysis to defendant's activities in Pennsylvania, we consider only those forum contacts initiated by the defendant. "It would be unfair ... to subject a defendant to suit not because of what it did but because of what someone else did." *Union National Bank*, 284 Pa.Super. at 542, 426 A.2d at 627.

Pennsylvania Lions clubs provide considerable support to Leader Dogs by financial contributions and sponsorship of Pennsylvania recipients of leader dog training. While such forum contacts may be initiated by third parties rather than by the defendant, see, *Union National Bank*, supra, other contacts with Lions clubs have been initiated by defendant. Specifically, Leader Dogs entertains Lions Club officials at its Michigan facility, provides speakers and information to Lions Club chapters, sends Lions Club sponsors copies of correspondence with applicants, and relies on Lions Club sponsors to assist in returning dogs to Michigan. Defendant acknowledges that its relationship with Lions clubs is continuous, see Defendant's Answers, supra, No. 63(e), and it may be substantial as well.

The contracts governing care of the leader dogs tendered to students on completion of the four-week program in Michigan also contemplate continuing relationships between defendant and some Pennsylvania residents. Although these form contracts are executed in Michigan, they are to be performed in the home states of training program graduates; 161 graduates presently live in Pennsylvania. *Cf. Pennsylvania Manufacturers' Association Ins. Co. v. Township of Gloucester*, 493 F.Supp. 1047 (E.D.Pa.1980) (sole forum contact was home office approval of insurance policy; all other contract activity occurred in New Jersey).

Solicitation of leader dogs by unpaid radio spot broadcasts constitute other forum contacts. Because the frequency of the Pennsylvania broadcasts is not of record, we cannot compare this activity with the solicitation in *Garfield v. Homowack Lodge, Inc.*, 249 Pa.Super. 392, 378 A.2d 351 (1977) (continuous and substantial forum activity found where defendant paid $2,000 per year for Pennsylvania newspaper advertising, maintained a toll-free telephone number, provided advertising brochures to Philadelphia travel agents, and paid ten percent referral fee to Pennsylvania travel agencies). However, defendant's solicitation is more than the New Jersey doctor-defendant's in *Lebkuecher v. Loquasto*, 255 Pa.Super. 608, 389 A.2d 143 (1978) (insufficient forum contacts where defendant possessed Pennsylvania medical license and listing in Pennsylvania classified telephone directory). Defendant's spot broadcasts are intended to obtain suitable guide dogs, not program applicants, but this advertising is related to the corporation's purpose—training and providing leader dogs—and is not the sole contact with the forum. It may also constitute "carrying on ... business" in Pennsylvania under 42 Pa.C.S.A. § 5301(a)(2)(iii).

Four Pennsylvania residents have special contacts with Leader Dogs. Grace Kleinhaus, a graduate of the Michigan program, is field representative for the Eastern and part of the Midwestern region. Defendant's Answers, supra, No. 9. Another Pennsylvania graduate is a member of the Board of Trustees and two Pennsylvania residents serve on an Advisory Board. Defendant's Amended Answers, supra, Nos. 68–69. This would not in itself constitute substantial affiliation with this forum, see *Bernardi Bros., Inc. v. Pride Manufacturing, Inc.*, 427 F.2d 297 (3d Cir. 1970) (insufficient contact with Texas corporation where manufacturer's representative lived in and made business calls from forum state), but may be considered with the other forum contacts.

The counselling service provided to graduates by telephone or visit of a field representative on the request of individual graduates is not significant because it is not initiated by defendant. *See, Union National Bank, supra.*

Leader Dogs' close and continuous relationship with Pennsylvania Lions clubs, its long-term contracts with Pennsylvania residents, its advertising on Pennsylvania radio stations, and the presence of four affiliated

persons would be sufficient to assert personal jurisdiction over the defendant only if it were reasonable for defendant to therefore expect to be haled into the courts of Pennsylvania. *World-Wide Volkswagen Corp., et al. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980); *see, Schwilm, supra* at 14–15. In making that determination the court would have to consider the practical effect of holding this non-profit institution subject to nation-wide jurisdiction based on its willingness to offer training to other than Michigan residents. However, disposition of the jurisdictional issue is not necessary because the case should be transferred pursuant to § 1404(a). *See, Schwilm, supra.*

## MOTION TO TRANSFER

"For the convenience of parties and witnesses, in the interest of justice," 28 U.S.C. § 1404(a) provides for transfer of "any civil action to any other district . . . where it might have been brought." Defendant seeks transfer of this action to the Eastern District of Michigan. It is conceded that this action might have been brought there. An action against defendant and the other original defendants to this suit is now pending in Michigan.

■ Motions to transfer are determined by consideration of the same factors relevant to a determination of a *forum non conveniens* motion. *Norwood v. Kirkpatrick*, 349 U.S. 29, 75 S.Ct. 544, 99 L.Ed. 789 (1955). They are:

1. relative ease of access to sources of proof;
2. availability of compulsory process for attendance of unwilling witnesses;
3. cost of attendance at trial by willing witnesses;
4. the possibility of view of the premises, if appropriate;
5. all other practical problems that make trial of a case easy, expeditious, and inexpensive;
6. "public interest" factors, including the relative congestion of court dockets, choice of law considerations, and

the relation of the community in which the courts and jurors are required to serve to the occurrences that give rise to the litigation.

*Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508–09, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947). In weighing these factors in regard to a § 1404(a) transfer motion, a lesser showing of inconvenience is required than when considering dismissal on *forum non conveniens* grounds. *Norwood, supra* 349 U.S. at 31–32, 75 S.Ct. at 546.

■ A plaintiff's choice of forum is entitled to great weight but this choice is entitled to less weight where plaintiffs admit that none of the operative facts of the action occur in the forum selected by the plaintiff; *Fitzgerald v. Central Gulf Steamship Corp.*, 292 F.Supp. 847, 849 (E.D.Pa. 1968). Here, three factors make transfer appropriate: 1) the impossibility of impleading or subpoenaing in this district the three former co-defendants in this action; 2) the pendency of plaintiffs' other action in the Eastern District of Michigan; and 3) the location of liability witnesses and relevant records in Michigan.

Defendant's inability to implead or cross-claim herein against the medical defendants dismissed from this lawsuit is a determinative factor. *See, Piper Aircraft Co. v. Reyno*, —— U.S. ——, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981) (district court dismissal on grounds of *forum non conveniens* reinstated). All claims should be resolved in one trial; this can occur only in Michigan. If defendant is found liable in this trial, defendant might not be permitted to assert its claims against the other defendants in the pending Michigan action and might then institute yet another action for indemnification or contribution.

Plaintiffs' action pending in the Eastern District of Michigan compels transfer. Where two actions have been instituted in different districts "§ 1404(a) authorizes transfer [even if] only . . . to enable the case to be consolidated for trial with [the other] case pending in the transferee district." *Maxlow v. Leighton*, 325 F.Supp. 913, 915–16 (E.D.Pa.1971). Defendant need

not show that consolidation would be ordered, because that decision is made following transfer. The court need only be satisfied that consolidation could be ordered and that considerations of justice make such an order likely. *Id.* at 916.

Pendency of plaintiff's action in Michigan also mitigates any hardship to plaintiffs from transfer. Although blind and diabetic, Mrs. Schmidt travelled to Michigan to obtain leader dog training and must travel there to litigate her pending claims. Transfer of this case to Michigan will not impose significant additional hardship on the Schmidts.

Location of witnesses is important; but it is the quality, not quantity, of witness testimony which must be considered. *Bartolacci v. Corp. of Presiding Bishops of Church of Jesus Christ of Latter-Day Saints*, 476 F.Supp. 381, 383 (E.D.Pa.1979); Wright, Miller & Cooper, *Federal Practice and Procedure* § 3851 (1976). Here again this consideration favors transfer.

Plaintiffs allege that defendant failed "to promptly and properly examine, diagnosis [sic], and treat injuries when they occurred; or provide for same." Complaint, ¶ 17(b). Defendant avers that on liability it not only would call six of its own Michigan employees but would seek to call employees of the medical defendants who have been dismissed from this action and are beyond the subpoena power of this court; Fed.R.Civ.P. 45(e)(1). Plaintiffs aver that two Pennsylvania residents, classmates of Mrs. Schmidt, would testify concerning liability. Plaintiffs' Memorandum in Opposition to Defendant's Motion to Transfer, 3–4. The inconvenience to these witnesses is outweighed by the inconvenience to defendant's witnesses and the interference with their charitable, health-care-related activities.

Plaintiffs also aver that they intend to call several treating physicians. Even where "the overwhelming number of plaintiff's possible witnesses include medical professionals who treated plaintiff *subsequent* to the accident," the case may be transferred because damage testimony would become relevant only if plaintiffs were to succeed on liability. *Bartolacci, supra* at 384; *see also, Leinberger v. Webster*, 66 F.R.D. 28, 35 (E.D.N.Y.1975) ("[T]he convenience of ... the New York [treating] physicians is entitled to little or no consideration."); *cf. Thompson v. Pilot Freight Carriers*, 212 F.Supp. 374 (E.D.Pa.1962) (transfer motion denied where testimony of local treating physicians would play large role at trial); *see also*, Wright, Miller & Cooper, *supra* § 3852.

Consideration of witnesses' convenience depends on the number of critical witnesses and the relative weight of the issues on liability and damage. In this case the convenience of liability witnesses is of greater significance. Reasonable alternatives as to damages are available to plaintiffs. *See, Bartolacci, supra* at 384.

Venue exists in the Eastern District of Michigan because that is where the cause of action arose. 28 U.S.C. § 1391(a). Since it is a district where the action might have been brought, defendant's alternative motion to transfer this case pursuant to 28 U.S.C. § 1404(a) will be granted in the interest of justice.

### ORDER

AND NOW, this 15th day of July, 1982, upon consideration of defendant's motion to dismiss for lack of *in personam* jurisdiction and motion to transfer pursuant to 28 U.S.C. § 1404(a), plaintiffs' responses thereto, and for the reasons stated in the accompanying Memorandum, it is ORDERED that:

1. The motion to dismiss is DENIED.

2. The motion to transfer to the United States District Court for the Eastern District of Michigan, where it might have been brought, is GRANTED.

3. The Clerk of this court shall send a certified copy of this Memorandum and Order together with the record in this case to the Clerk of that court.