Frederick **KAHHAN**

v.

**CITY OF FORT LAUDERDALE.**

No. 82–213.

United States District Court,
E.D. Pennsylvania.

June 24, 1983.

Gary Green, Sidkoff, Pincus, Greenberg & Green, Philadelphia, Pa., for plaintiff.

Daniel J. Ryan, Philadelphia, Pa., for defendant.

## MEMORANDUM

SHAPIRO, District Judge.

Defendant City of Fort Lauderdale, Florida, a municipal corporation, has moved to dismiss for lack of *in personam* jurisdiction, or in the alternative to transfer the action to the Southern District of Florida where it is located. There having been full discovery on these issues, the motion to transfer pursuant to 28 U.S.C. § 1404(a) will be granted.

Plaintiff Frederick Kahhan is now a citizen and resident of the Commonwealth of Pennsylvania. In April, 1980, in Philadelphia, Kahhan listened to several radio advertisements seeking to recruit applicants for the Fort Lauderdale police department. Kahhan responded to these advertisements, and on or about April 25, 1980, met with Fort Lauderdale recruiters at the Holiday Inn at 18th and Market Streets in Philadelphia. Kahhan was given an oral and written examination here and told that, if he passed a polygraph examination in Florida, he would be offered a permanent position with the Fort Lauderdale police. Plaintiff was already on a waiting list of the Philadelphia Police Department; moving to Florida would disqualify him from the Philadelphia appointment. Kahhan informed the representatives of Fort Lauderdale of this fact.

In June, 1980, Kahhan travelled to Fort Lauderdale, took and passed the tests including a polygraph test. In August, 1980, he began working for the Fort Lauderdale Police Department.

After working as a Fort Lauderdale policeman for several months, Kahhan injured his knee and was placed on "light duty". Shortly after this, plaintiff contends that an officer of the Police Internal. Affairs Unit "threatened, falsely accused, harrassed, intimidated, verbally abused and otherwise inflicted mental distress upon plaintiff, including making anti-semitic and anti-Jewish remarks to plaintiff (who is Jewish), and offered plaintiff the alternative of immediately resigning from his position, or being fired by defendant and having his personnel file falsified to make it appear that plaintiff was untrustworthy, a drug user, and generally unfit for police work." Complaint, ¶ 14. Plaintiff resigned and now contends that the actions of Fort Lauderdale, through its employees, violated 42 U.S.C. § 1983.

### Motion to Transfer

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Defendant seeks transfer of this action to the Southern District of Florida. This action might have been brought there under either 28 U.S.C. § 1391(b) or 28 U.S.C. § 1391(c). In a case such as this where jurisdiction is claimed both by reason of diversity (28 U.S.C. § 1332) and the existence of a federal question (28 U.S.C. § 1331), Complaint ¶ 3, 28 U.S.C. § 1391(b) provides that an action "may be brought only in the judicial district where all defendants reside, or in which the claim arose..." The sole defendant City of Fort Lauderdale is in the Southern District of Florida, so that venue exists there under § 1391(b). Section 1391(c) provides that "A corporation may be sued in any judicial district in which it is incorporated or licensed to do business or is doing business..." The City of Fort Lauderdale, a municipal corporation doing business as Fort Lauderdale in Southern Florida, may be sued in the Southern District of Florida under this provision as well.

The motion to transfer will be considered and granted without resolution of the jurisdictional issue. Even were it decided that this court did not have jurisdiction, it would still have power to transfer the case to another district under § 1404(a). *United States v. Berkowitz,* 328 F.2d 358 (3rd Cir.), *cert. denied,* 379 U.S. 821, 85 S.Ct. 42, 13 L.Ed.2d 32 (1964); *Donnelly v. Klosters Rederi A/S,* 515 F.Supp. 5 (E.D.Pa. 1981); *see Schwilm v. Holbrook,* 661 F.2d 12, 15 (3rd Cir.1981); *cf. Goldlawr, Inc. v. Heiman,* 369 U.S. 463, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962) (transferor court need not have had jurisdiction over the defendant to effect a transfer under 28 U.S.C. § 1406(a)).

Motions to transfer are determined by consideration of the same factors relevant to a determination of a *forum non conveniens* motion. *Norwood v. Kirkpatrick,* 349 U.S. 29, 75 S.Ct. 544, 99 L.Ed. 789 (1955). They are:

1) Relative ease of access to sources of proof;

2) Availability of compulsory process for attendance of unwilling witnesses;

3) Cost of attendance at trial by willing witnesses;

4) The possibility of view of the premises, if appropriate;

5) All other practical problems that make trial of a case easy, expeditious, and inexpensive;

6) "Public interest" factors, including the relative congestion of court dockets, choice of law considerations, and the relation of the community in which the courts and jurors are required to serve to the occurrences that give rise to the litigation. *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508–09, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947). In weighing these factors in regard to a § 1404(a) transfer motion, a lesser showing of inconvenience is required than when considering dismissal on *forum non conveniens* grounds. *Norwood, supra,* 349 U.S. at 31–32, 75 S.Ct. at 546.

In this case, three factors make transfer appropriate: (1) the convenience of witness-

es, a factor of relative ease of access to sources of proof; (2) the cost of attendance of willing witnesses, and; (3) the "public interest" factor of conservation of scarce judicial resources.

The convenience of witnesses weighs heavily towards a determination to transfer. In this case, both liability and damages are at issue. It will be helpful to examine the convenience of liability witnesses separately from the convenience of damage witnesses, since liability witnesses may be considered of higher quality and their convenience given more weight. *Schmidt v. Leader Dogs for the Blind,* 544 F.Supp. 42 (E.D.Pa.1982) ("damage testimony would become relevant only if plaintiffs were to succeed on liability"); *Bartolacci v. Corp. of Presiding Bishops of Church of Jesus Christ of Latter-Day Saints,* 476 F.Supp. 381, 383 (E.D.Pa.1979); *see also, Leinberger v. Webster,* 66 F.R.D. 28, 35 (E.D.N.Y.1975).

Most of the liability witnesses would find a Florida trial more convenient. Plaintiff Kahhan argues that testimony of employees of the Holiday Inn where plaintiff was interviewed will be necessary to prove liability. Plaintiff's Supplemental Memorandum at 4 [Docket # 29], but since the defendant admits that they rented rooms at the Holiday Inn, Defendant's Supplemental Memorandum at 5 [Docket # 24], it is difficult to understand why Holiday Inn employees would need to testify at trial. Mr. Floyd, the recruiter who visited Philadelphia, lives in Fort Lauderdale and would find that forum more convenient. Defendant's Supplemental Memorandum at 5 [Docket # 24]. The Fort Lauderdale policemen would obviously find Florida a more convenient forum, as would any local residents likely to be familiar with police practices in the area. Plaintiff has argued that he need not elicit testimony from numerous Florida residents to present a prima facie case, because under the rule of *Monell v. Dept. of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), a plaintiff may prove a violation of Section 1983 by showing that there is an official policy. Plaintiff contends he would require few Florida witness-

es. Plaintiff's Supplemental Brief at 7 [Docket # 23]. This argument loses force when plaintiff later admits that he is not willing to commit himself to proving his case in this manner, and may be forced to prove an official custom. Plaintiff's Supplemental Brief at 8 [Docket # 23]. Furthermore, this court must evaluate the convenience of all the witnesses; no authority has been cited which supports giving greater weight to the testimony of those witnesses necessary to establish plaintiff's prima facie case. Defendant intends to offer evidence as to liability with testimony of Fort Lauderdale police officers or residents, and if plaintiff is required to go beyond demonstrating a prima facie case the preponderance of the witnesses on liability would be inconvenienced by retention of this trial in Philadelphia.

Many of the damage witnesses would be inconvenienced by a Florida trial. Members of the Philadelphia Police Department may testify regarding plaintiff's loss of employment opportunity here, the plaintiff's treating physician upon his return to Philadelphia may testify, and Teresa Willard may testify to plaintiff's condition upon his return to Pennsylvania. Plaintiff's Supplemental Memorandum at 4 [Docket # 29]. (Ms. Willard has been offered as both a liability and damage witness, but her deposition testimony shows that she has no first-hand knowledge of liability issues. Defendant's Supplemental Memorandum at 2, citing Willard deposition at 18–19 [Docket # 28].) But the convenience of liability witnesses is more important (because without liability there is no damages testimony, *Schmidt, supra*) and alternatives to live testimony are available for damage witnesses. *Bartolacci, supra.* Plaintiff argues that the testimony of Fort Lauderdale's police could be taken by videotape, Plaintiff's Supplemental Brief at 10 [Docket # 23], but the testimony of Philadelphia's police could also be taken by videotape. Credibility determination from face-to-face confrontation will be more important as to the Fort Lauderdale police, who will be testifying regarding alleged

customary or official discrimination by the City of Fort Lauderdale, than as to the Philadelphia police who will be testifying regarding whether the plaintiff lost an employment opportunity here. The convenience of the treating physician is entitled to little or no consideration. *Leinberger v. Webster, supra* at 35. While the location of witnesses is important, it is the quality not quantity of witness testimony which must be considered. *Bartolacci* at 383, Wright & Miller, Federal Practice and Procedure § 3851 (1976). This consideration favors transfer.

 The second factor in favor of transfer is the cost of attendance of willing witnesses. Most of the witnesses, whether in Pennsylvania or Florida could be videotaped but some of those in Florida might well be critical. Because of the importance of the liability issue a greater number of Florida witnesses will be required to testify; their attendance in person would increase the cost of the trial, if held in Philadelphia. It is no answer to say that the City of Fort Lauderdale was able to travel to Philadelphia to recruit, and therefore it should be able to come here to litigate. For one thing, this lawsuit does not arise out of the City's conduct in recruiting; it arises out of the treatment of the plaintiff after he moved to Fort Lauderdale and was working there. Recruiters from Fort Lauderdale travelled not only to Philadelphia, but also to many cities in the country in order to recruit minority persons for their police force. Exposing the city to litigation all over the country would make it difficult for Fort Lauderdale or other cities contemplating future recruitment drives to justify the risk of such exposure. In a situation such as this where one is asked to weigh the costs to the taxpayers of a municipality in transporting a number of "quality" liability witnesses, against the cost to a private individual plaintiff of transporting damage witnesses, the balance is easy to strike. The cost of attendance factor favors transfer to Florida. *Cf. Schmidt, supra* at 48 (incon-

venience to plaintiff's witnesses outweighed by inconvenience to defendant's witnesses and the interference with their charitable, health-related activities).

The public interest in conserving judicial resources also makes transfer appropriate. Whether sufficient contacts exist to create *in personam* jurisdiction over Fort Lauderdale and whether venue lies in Pennsylvania is in doubt.[1] Neither of these questions would exist in Florida: *in personam* jurisdiction over a resident corporation would be clear, and there is venue in Florida under either § 1391(b) or § 1391(c). "Substantial time, money and effort will be required to determine these preliminary jurisdictional issues which are rendered unnecessary if the action is transferred to the Southern District of Florida, which has *in personam* jurisdiction over the defendant and is a forum where the action might have been brought. A transfer, obviating a jurisdictional difficulty, has been found to serve the interests of justice within the meaning of that language in § 1404(a)." *Donnelly v. Klosters Rederi A/S*, 515 F.Supp. 5, 7 (E.D.Pa.1981), citing *Terukuni Kaiun Kaisha, Ltd. v. C.R. Rittenberry, Inc.*, 454 F.Supp. 418 (S.D.N.Y.1978). The motion to transfer will be granted.

1. Venue would exist under § 1391(b) only if "the claim arose" here and under § 1391(c) only if defendant corporation is "doing business" here.