**EAGLE TRAFFIC CONTROL, INC.,**

v.

**JAMES JULIAN, INC., James Julian, Inc. of Delaware and James J. Julian.**

No. 96–CV–2454.

United States District Court, E.D. Pennsylvania.

July 18, 1996.

---

Joseph A. McGinley, Lavin, Coleman, Finarelli and Gray, Philadelphia, PA, for plaintiff.

Stanley C. Macel, III, Connolly, Bove, Lodge, & Hutz, Wilmington, DE, for defendants.

## MEMORANDUM

JOYNER, District Judge.

Plaintiff Eagle Traffic Control, Inc. ("Eagle") has brought this action alleging violations of several Delaware state laws as well as the federal Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–68 (1984 & Supp.1996) ("RICO") by Defendants James Julian, Inc. ("JJI"), James Julian, Inc. of Delaware ("JJID") and James J. Julian. JJID and Mr. Julian seek to be dismissed from this action on the ground that they are not subject to personal jurisdiction in this Court. All three Defendants seek to dismiss the complaint for failure to state a claim upon which relief may be granted, or alternatively, to dismiss or transfer the action to the District of Delaware for improper venue or under the doctrine of abstention.

**Factual Background**

Eagle is a Pennsylvania corporation in the business of providing traffic control services to construction companies.[1] Both JJI and JJID are Delaware corporations in the business of doing highway construction work. Mr. Julian is an individual residing in Delaware and is the area manager for each corporation as well as the Vice–President of JJID. Between 1993 and 1995, Eagle entered into two subcontracts with JJI and one subcontract with JJID to provide products, services, labor and goods on three different highway construction projects in Delaware. JJI and JJID were the prime contractors hired by the Delaware Department of Transportation ("DelDOT"). Eagle also entered into two subcontracts with JJI to perform work on two highways in Pennsylvania.

Pursuant to the Delaware subcontracts, Eagle was to be paid contract fees during the course of each contract as well as "retainages" that were to be withheld until the end of each project. Eagle alleges that JJI and JJID repeatedly misrepresented to DelDOT that they were paying Eagle when, in fact, Mr. Julian was directing them not to. Defendants allegedly made these misrepresentations in order to continue receiving funds from DelDOT. With respect to the Pennsylvania subcontracts, Eagle alleges that JJI has breached each subcontract. JJI allegedly did this in order to strengthen its bargaining power with respect to the Delaware subcontracts.

Finally, the Complaint alleges that Defendants have committed fraud regarding a jury verdict Eagle won in this Court against a third party called Addco. Eagle alleges that JJI has wrongfully charged Eagle the pre-

---

1. These facts are culled from Eagle's Amended Complaint, filed after this Motion's briefing was completed. Defendants' recent letter to this Court indicates that it does not object to our use of the Amended Complaint to decide the instant Motion.

cise amount Eagle won in the other case in an attempt to prevent Eagle from recognizing the benefit of its verdict.

## DISCUSSION

### 1. PERSONAL JURISDICTION

■ JJID and Mr. Julian have challenged Eagle's assertion of personal jurisdiction over them. Once challenged, the burden is on plaintiff to prove personal jurisdiction. *Grand Entertainment Group v. Star Media Sales,* 988 F.2d 476, 482 (3d Cir.1993). Prior to trial, a plaintiff need only make a prima facie showing of jurisdiction and courts must take the plaintiff's facts as true for the purposes of the analysis. *Mellon Bank PSFS Nat'l Ass'n v. Farino,* 960 F.2d 1217, 1223 (3d Cir.1992); *National Cathode Corp. v. Mexus Co.,* 855 F.Supp. 644, 647 (S.D.N.Y. 1994).

Federal courts have personal jurisdiction over non-resident defendants to the extent permitted in the state in which the federal court sits. Fed.R.Civ.P. 4(e). Therefore, our first step is to examine Pennsylvania law. Relevant to this action, Pennsylvania's long-arm statute provides general personal jurisdiction over a corporation if that corporation is incorporated under or qualified as a foreign corporation under the laws of the Commonwealth or if it has consented to suit in the Commonwealth. 42 Pa.Cons.Stat.Ann. § 5301(a)(2)(i & ii) (1981 & Supp.1995). Pennsylvania grants specific personal jurisdiction over a person for causes of action arising from that person's activities within the forum. 42 Pa.Cons.Stat.Ann. § 5322(a).

The United States Supreme Court, in turn, has defined the due process limit of Constitutionally permitted non-resident jurisdiction in a series of decisions including *International Shoe Co. v. State of Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980) and *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). It has held that jurisdiction is proper when:

> the contacts proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State. Thus where the defendant 'deliber-

ately' has engaged in significant activities within a State, or has created 'continuing obligations' between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there.

*Burger King,* 471 U.S. at 475–76, 105 S.Ct. at 2184.

■ Accordingly, there must be some affirmative act "by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958). These acts must be "such that [the defendant] should reasonably anticipate being haled into court" in the forum state. *World–Wide Volkswagen,* 444 U.S. at 297, 100 S.Ct. at 567. The Third Circuit has repeatedly held that courts should take a "highly realistic" view when deciding whether to assert personal jurisdiction over a non-resident defendant. *Mellon Bank,* 960 F.2d at 1224; *Grand Entertainment,* 988 F.2d at 482.

### A. Mr. Julian

■ Turning to this action, Eagle bases personal jurisdiction over Mr. Julian on his alleged contempt of court in attempting to defraud Eagle of the jury award it won here. Eagle concedes that there is no other basis for personal jurisdiction over Mr. Julian. Eagle cites two cases from other jurisdictions holding that personal jurisdiction exists over a person who knowingly and actively aids and abets a party in violating a court order on the basis of a "super contact" with that forum. *Reebok Int'l, Ltd. v. McLaughlin,* 49 F.3d 1387, 1391 (9th Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 276, 133 L.Ed.2d 197 (1995); *Waffenschmidt v. MacKay,* 763 F.2d 711, 714 (5th Cir.1985), *cert. denied,* 474 U.S. 1056, 106 S.Ct. 794, 88 L.Ed.2d 771 (1986). Eagle maintains that Mr. Julian is in contempt of court for allegedly trying to defraud it out of its jury verdict.

Mr. Julian rightfully contests this argument. The cases cited by Eagle are not analogous to this action. In those cases, the courts exercised personal jurisdiction over

**1256**

the foreign parties so that they could proceed on contempt actions against them. Here, in contrast, there are and have been no contempt proceedings; rather, Eagle sues Mr. Julian for fraud. For this reason, even if we were to apply the "super contact" theory, Mr. Julian would not fit within its scope. Accordingly, personal jurisdiction cannot be based on this argument and he shall be dismissed from this action.

### B. JJID

■ Eagle bases general personal jurisdiction over JJID on the ground that it is qualified to do business within this state as a foreign corporation. Pennsylvania's personal jurisdiction statute expressly grants jurisdiction in such an instance. JJID nonetheless contests personal jurisdiction by pointing to one of this Court's previous rulings, *Romann v. Geissenberger Mfg. Corp.*, 865 F.Supp. 255 (E.D.Pa.1994).

There, we held that although a foreign corporation was qualified to do business in Pennsylvania, we had no jurisdiction over that corporation because it did not otherwise have "systematic and continuous contacts" with the Commonwealth. *Id.* at 260. We have re-examined that particular holding and find that it is in conflict with Third Circuit precedent and therefore, is not controlling in this instance.

The Third Circuit has ruled that based on Pennsylvania's jurisdiction statute, a foreign corporation is subject to suit in Pennsylvania even if its only contact with the state is its authorization to do business in Pennsylvania. *Bane v. Netlink, Inc.*, 925 F.2d 637 (3d Cir. 1991). In the alternative, the Court held that pursuant to the then-current authorization statute, being authorized to do business in Pennsylvania carried with it consent to be sued in Pennsylvania because all authorized corporations had to designate the Secretary of State as their registered service agent. *Id.* at 640.

By the time we decided *Romann*, the authorization statute had been amended to make designation of an in-state registered

agent optional. 15 Pa.Cons.Stat.Ann. § 4124(a)(4) (1995). We held that the statute's change was significant enough to affect *Bane*'s precedential value. Upon re-examination, we do not find this to be so. The bottom line is that Pennsylvania's long-arm statute provides for personal jurisdiction when a foreign corporation takes the particular action of becoming authorized to do business in Pennsylvania.

The statute complies with due process because becoming authorized is an affirmative act "by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson*, 357 U.S. at 253, 78 S.Ct. at 1240. Further, it paves the path for a situation in which the defendant "should reasonably anticipate being haled into court." *World-Wide Volkswagen*, 444 U.S. at 297, 100 S.Ct. at 567. For these reasons, we find that JJID is subject to personal jurisdiction pursuant to 42 Pa.Cons.Stat.Ann. § 5301(a)(2)(i).

■ In the alternative, we find that JJID has consented to suit in this forum by designating an in-state registered agent. 42 Pa. Cons.Stat.Ann. § 5301(a)(2)(ii); *Bane*, 925 F.2d at 640. Accordingly, this Court has general personal jurisdiction over JJID.

### 2. RICO CLAIMS

We turn now to Defendants' second argument, that Eagle's complaint fails to state a claim upon which relief can be granted under RICO and that therefore Count V should be dismissed.[2]

### A. Racketeering Activity

■ A pleading requirement under RICO is to allege that the defendant took part in "racketeering activity." 18 U.S.C. § 1962(a). Defendants argue that Eagle's complaint should be dismissed because it does not allege that they committed any of the racketeering acts listed in RICO's predicate offenses list. Defendants are correct in stating that the list of predicate offenses provided in 18 U.S.C. § 1961(1) is all-inclusive. *Tabas v.*

---

2. Defendants make a brief argument that Count V lacks sufficient specificity. We find that Eagle

adequately explains its RICO claim and therefore deny dismissal on this ground.

*Tabas,* 47 F.3d 1280, 1291 (3d Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 2269, 132 L.Ed.2d 275 (1995). The list, though, includes the offense of mail fraud. Eagle's complaint alleges that Defendants' unlawful acts included mail fraud. Because mail fraud is a predicate act and because Eagle's complaint alleges, in part, mail fraud, we find that Eagle has adequately pleaded racketeering activity under RICO.

### B. Pattern of Racketeering Activity

 Defendants argue that even if Eagle has pleaded a racketeering activity, it has not pleaded a pattern of activity, as required by RICO. 18 U.S.C. § 1961(5) (" 'a pattern of racketeering activity' requires at least two acts of racketeering activity"). The Supreme Court has held that in addition to mere numerosity, a plaintiff must show a threat of continuing activity. *H.J., Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 240, 109 S.Ct. 2893, 2900, 106 L.Ed.2d 195 (1989). One way this can be done is by showing that defendants' wrongful acts constitute its "regular way of doing business." *Id.* at 242–43, 109 S.Ct. at 2902; *Tabas,* 47 F.3d at 1293; *Barticheck v. Fidelity Union Bank/First Nat'l State,* 832 F.2d 36, 39 (3d Cir.1987).

Eagle alleges that Defendants' wrongdoing has been ongoing for at least twelve months and continues until the present time. We find that, taking Eagle's complaint as a whole and making reasonable inferences therefrom, Eagle has adequately alleged that mail fraud is part of Defendants' regular way of doing business. *Id.* Further, we find that Eagle has adequately alleged that Defendants' wrongful acts are continuous and pose a present threat of additional criminal activity. *Hughes v. Consol–Pa. Coal Co.,* 945 F.2d 594, 610 (3d Cir.1991), *cert. denied,* 504 U.S. 955, 112 S.Ct. 2300, 119 L.Ed.2d 224 (1992). For these reasons, we find that Eagle has adequately alleged a pattern of racketeering activity.

### C. 18 U.S.C. § 1962(a)

We turn now to Defendants' arguments in support of dismissing Eagle's individual claims under RICO. First, Section 1962(a) makes it unlawful for:

> any person who has received any income derived ... from a pattern of racketeering activity ... to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in ... interstate commerce.

Defendants contend that Eagle makes no allegation that could support a claim under § 1962(a). They point out that there is no allegation that any Defendant invested any proceeds from racketeering activity in an enterprise or that such an investment injured Eagle. *Lightning Lube, Inc. v. Witco Corp.,* 4 F.3d 1153, 1188–89 (3d Cir.1993). Eagle does not contest this argument, and as the necessary allegations are in fact missing from the complaint, Eagle's claims under § 1962(a) shall be dismissed.

### D. 18 U.S.C. § 1962(b)

 Section 1962(b) makes it unlawful for "any person through a pattern of racketeering activity ... to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce." As with § 1962(a), a plaintiff must show that it has been injured by the control of the RICO enterprise in addition to showing injury from the predicate acts themselves. *Lightning Lube,* 4 F.3d at 1191.

Eagle contends that Defendants used the income gained from its racketeering activity to maintain themselves and that this maintenance allowed Defendants to injure Eagle. This argument, "that the use and investment of racketeering income keeps the defendant alive so that it may continue to injure plaintiff" has been repeatedly rejected by the courts. *Id.* at 1188, 1191. As above, we find that Eagle has failed to plead an "injury independent from that caused by the pattern of racketeering activity." *Id.* at 1191. For that reason, Eagle's claims under § 1962(b) shall be dismissed.

### E. 18 U.S.C. § 1962(c)

 Section 1962(c) makes it unlawful for "any person employed by or associated with

any enterprise ... to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." An enterprise may be comprised of individuals or corporations and may take the form of a legal entity or an association in fact. 18 U.S.C. § 1961(4); *Shearin v. E.F. Hutton Grp., Inc.*, 885 F.2d 1162, 1165–66 (3d Cir.1989).

Defendants attest that Eagle has alleged that they are but one entity, and that therefore, there is no separate RICO enterprise. It is well-established that the defendant and the enterprise cannot be one and the same entity, because an entity cannot associate with itself. So, in *Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*, 30 F.3d 339, 344 (2d Cir.1994), the Second Circuit held that a parent company could not be an enterprise with its subsidiary company because the two were one and the same.

Eagle, however, has alleged that JJI and JJID are separate entities and that Mr. Julian is independently associated with each. We find that this case is similar to *Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 263 (2d Cir.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 916, 133 L.Ed.2d 846 (1996). There, one man owned two separate companies and the three combined to commit RICO predicate acts. Each independent entity benefited from the wrongful acts. The Second Circuit held that a § 1962(c) action could proceed against all three defendants because each was alleged to be separate from the other. Similarly, the Seventh Circuit found that a sole proprietor could associate with his company to form a RICO enterprise when the company had employees other than the sole proprietor. *McCullough v. Suter*, 757 F.2d 142, 144 (7th Cir.1985).

Like the Second and Seventh Circuits, we find that because Eagle has alleged that JJI and JJID are distinct from each other and that Mr. Julian is distinct from each corporation that they are capable of associating with each other to form a RICO enterprise. 65 F.3d at 263. Based on Eagle's allegations, therefore, we will not dismiss this claim against Defendants.

## F. *18 U.S.C. § 1962(d)*

Having found that Eagle may proceed on one of its RICO claims against Defendants, we look at its conspiracy claim. This section makes it unlawful "for any person to conspire to violate any of the [above] provisions." 18 U.S.C. § 1962(d). Accordingly, in addition to pleading violation of a substantive RICO offense, a plaintiff must also allege the basics of a conspiracy claim, including its duration, its object and the actions taken to achieve its purpose. *Shearin*, 885 F.2d at 1166.

Defendants claim that Eagle has failed to plead allegations that would support a conspiracy claim. We disagree. Eagle's complaint makes all the above allegations, and in sufficient detail. *Rose v. Bartle*, 871 F.2d 331, 365–66 (3d Cir.1989). For that reason, the complaint states a claim under § 1962(d) and this claim shall not be dismissed.

## 3. *VENUE*

The principle of venue is one of locality: "it concerns the forum where a lawsuit may be brought and judicial authority exercised. By limiting a plaintiff's choice of forum beyond those courts which have personal and subject matter jurisdiction, venue statutes protect defendants from litigating in an unfair or inconvenient location." *Rocket Jewelry Box, Inc. v. Noble Gift Packaging, Inc.*, 869 F.Supp. 152, 154 (S.D.N.Y.1994). 28 U.S.C. § 1404(a) provides that "[f]or the [1] convenience of parties and [2] witnesses, and [3] in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." In addition to these three factors, courts have great discretion to consider several other factors to determine whether a transfer would be proper:

(1) Plaintiff's choice of forum;

(2) Relative ease of access to sources of proof;

(3) Availability of compulsory process for attendance of unwilling witnesses;

(4) Cost of obtaining attendance of willing witnesses;

(5) Possibility of viewing premises, if applicable;

(6) All other practical problems that make trial of a case easy, expeditious, and inexpensive; and

(7) "Public interest" factors, including the relative congestion of court dockets, choice of law consideration, and the relationship of the community in which the courts and jurors are required to serve to the occurrences that give rise to the litigation.

*Romann,* 865 F.Supp. at 264; *Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 29, 108 S.Ct. 2239, 2243–44, 101 L.Ed.2d 22 (1988).

■ The first factor, plaintiff's choice of forum, "should rarely be disturbed," *Gulf Oil Co. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947) as it is "a paramount consideration." *Shutte v. Armco Steel Corp.,* 431 F.2d 22, 25 (3d Cir.1970), *cert. denied,* 401 U.S. 910, 91 S.Ct. 871, 27 L.Ed.2d 808 (1971). In exercising their discretion, courts consistently hold that a "[plaintiff's] choice is deserving of less weight where none of the operative facts of the action occur in the forum selected by the plaintiff." *National Mortg. Network, Inc. v. Home Equity Centers, Inc.,* 683 F.Supp. 116, 119 (E.D.Pa.1988); *see also, Schmidt v. Leader Dogs for the Blind, Inc.,* 544 F.Supp. 42, 47 (E.D.Pa.1982); *Fitzgerald v. Central Gulf Steamship Corp.,* 292 F.Supp. 847, 849 (E.D.Pa.1968).[3]

■ Eagle's Amended Complaint alleges that two of the breached contracts relate to construction projects in Pennsylvania, one in the Eastern District of Pennsylvania. These breaches were allegedly undertaken in order to further Defendants' RICO activities. Further, Eagle alleges that Defendants attempted to defraud Eagle out of a jury verdict it won in this Court. These allegations sufficiently implicate Pennsylvania to make Eagle's choice of forum an important consideration.

Second, taking Eagle's facts as true, we find that the witnesses and evidence are found in both Pennsylvania and Delaware. Further, the proximity of this and the Dela-

ware district court lessens the relevance of many other factors, such as availability of compulsory process and cost of attendance of witnesses. In addition, Pennsylvania has an interest in this action, because Eagle alleges some form of misuse of its highway funds. These factors, then, do not demonstrate that Pennsylvania is an inherently inconvenient or inappropriate forum for Defendants.

Third, both parties agree that Delaware state law, in addition to federal law, will apply to this case. Although "[t]here is an appropriateness ... in having the trial ... in a forum that is at home with the state law that must govern the case," this Court is able to fairly apply Delaware state law. *DeMateos v. Texaco, Inc.,* 562 F.2d 895, 900 (3d Cir.1977), *cert. denied,* 435 U.S. 904, 98 S.Ct. 1449, 55 L.Ed.2d 494 (1978) (quoting *Gulf Oil,* 330 U.S. at 509, 67 S.Ct. at 843).

■ Finally, a parallel action was filed by Defendants against Eagle in Delaware's Superior Court two weeks before this action was filed. Public interest considerations weigh in favor of transferring an action to a forum where a related action is pending. However, in light of all the other factors weighing in favor of retention, this factor does not overcome the interest placed on Eagle's choice of forum.

For the above reasons, we find that it is not in the interest of justice for this action to be transferred to the District of Delaware pursuant to 28 U.S.C. § 1404(a) and therefore, shall deny this part of Defendants' motion.

## 4. ABSTENTION

■ Abstention is a doctrine whereby a federal court refrains from litigating an action in favor of an on-going state action. Abstention is, however, "the exception, not the rule." *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976). It has never been "a doctrine of equity that a federal court should exercise its judicial dis-

---

**3.** A plaintiff's choice of forum is also not credited if it is chosen to vex and harass a defendant. *Gulf Oil,* 330 U.S. at 507, 67 S.Ct. at 842. Defendants claim that Eagle chose this forum with an improper motive; however, they provide no factual support, in the form of affidavits or otherwise, to support this claim. Eagle's choice is not weakened on this count, therefore.

**1260**

cretion to dismiss a suit merely because a State court could entertain it." *Alabama Pub. Serv. Comm'n v. Southern R. Co.,* 341 U.S. 341, 361, 71 S.Ct. 762, 774, 95 L.Ed. 1002 (1951). Rather, courts are to conduct a careful balancing of factors, but with "the balance heavily weighted in favor of the exercise of jurisdiction." *Moses H. Cone Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 16, 103 S.Ct. 927, 937, 74 L.Ed.2d 765 (1983).

■ Defendants' argument in favor of abstention is that: (1) abstention will avoid piecemeal litigation; (2) the Delaware action was filed first; (3) the federal forum is inconvenient; (4) Delaware state law governs this action; (5) Delaware state courts have concurrent jurisdiction over Eagle's RICO claim and (6) Eagle's motive in filing this second, federal action is vexatious. The Supreme Court has listed each of these factors as a reason why abstention may be appropriate. *Moses H. Cone Hosp.,* 460 U.S. at 26, 103 S.Ct. at 942; *Colorado River,* 424 U.S. at 818, 96 S.Ct. at 1246–47.

We have carefully considered Defendants' arguments and find that the equities do not weigh in favor of abstention. First, it does not appear as if the claims asserted in the two actions are identical, although they do both involve many of the same contracts. This Court has previously ruled that it need not abstain simply because it cannot provide a comprehensive determination of the rights of the parties. *See e.g., Weitz v. Burton Photo Indus., Inc.,* No. 95–4280, 1996 Westlaw 165525 at *3 (E.D.Pa. Apr. 9, 1996); *Allied Nut & Bolt, Inc. v. NSS Indus., Inc.,* 920 F.Supp. 626, 630 (E.D.Pa.1996).

Second, we do not apply the "first-filed" factor rigidly. Rather, we look to the amount of progress made in each action. *Moses H. Cone Mem. Hosp.,* 460 U.S. at 22, 103 S.Ct. at 940. From what we understand, the Delaware action is in approximately the same procedural status as this action. Third, considering our ruling on venue, we reject Defendants' contention that this forum is inconvenient.

■ Fourth, simply because Delaware state law will be important in this case, or because Delaware state courts have concur-

rent jurisdiction over RICO claims, does not convince us to relinquish jurisdiction. "[T]he presence of federal-law issues must always be a major consideration weighing against surrender." *Id.* at 26, 103 S.Ct. at 942. In addition, the prospect of applying state law does not weigh in favor of abstention since the very premise of diversity jurisdiction is that "federal courts are competent to adjudicate [state] issues." *Cottman Transmission Sys., Inc. v. Lehwald, Inc.,* 774 F.Supp. 919, 923 (E.D.Pa.1991).

Finally, as noted above in footnote three, there is no evidence to support Defendants' contention that Eagle's motive in filing this action was vexatious. Considering all of Defendants' arguments and independently evaluating this action, we decline to abstain from this action. Rather, we will exercise our "virtually unflagging obligation ... to exercise the jurisdiction given" us. *Colorado River,* 424 U.S. at 817, 96 S.Ct. at 1246.

An appropriate Order follows.

## ORDER

AND NOW, this 18th day of July, 1996, upon consideration of Defendants' Combined Joint Motion to Dismiss James Julian, Inc. of Delaware and James J. Julian and all RICO Allegations, and Motion in the Alternative to Dismiss, Stay or Transfer this Action to the District of Delaware and response thereto, the Motion is hereby GRANTED in PART. The Motion is hereby Granted in that (1) James J. Julian is hereby DISMISSED from this action and (2) Plaintiff's Claims in Count V under 18 U.S.C. § 1962(a & b) are hereby DISMISSED against all Defendants.

The Motion is hereby DENIED in all other respects.